UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

KATIE ELLEN PURIS,                                    :
                                                      :
                        Plaintiff,                    :        No. 1:24-cv-00944
                                                      :
        - against -                                   :
                                                      :
TIKTOK INC., BYTEDANCE LTD., BYTEDANCE                :
INC., DOUYIN LIMITED, and LIDONG ZHANG,               :
                                                      :
                                                      :
                        Defendants.                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


**DEFENDANTS TIKTOK INC., BYTEDANCE LTD., AND BYTEDANCE INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND STAY THE ACTION**


*Of Counsel:*
Ivan D. Smith
Maureen M. Stampp
Amanda Williams




SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

*Attorneys for Tiktok Inc., Bytedance Ltd., and Bytedance Inc.*

## TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ................................................................1

II.  FACTUAL BACKGROUND ..............................................................4

    A.  Plaintiff Joins BDI and Enters Into the Arbitration Agreements ........................... 4

    B.  Plaintiff's Allegations ..........................................................................5

        1.  The EFAA and the Cannes Incident ...............................................6

III.  ARGUMENT ....................................................................................9

    A.  Pursuant To The FAA, Plaintiff's Claims Should Be Arbitrated Because She Entered Into Valid Written Agreements That Cover Her Claims. ......................... 9

        1.  Plaintiff Entered Into Valid and Enforceable Arbitration Agreements .....10

    B.  The EFAA Does Not Preclude Arbitration in this Matter ................................... 12

        1.  Plaintiff Does Not Expressly Assert a Sexual Harassment Claim Against any Defendant...............................................................13

            a.  Plaintiff Dooms Her Title VII Claim By Failing to Plead Control And Negligence. ............................................. 15

            b.  Plaintiff Cannot Credibly Allege that Defendants are Liable for a Non-Employee's Sexual Harassment Under the NYSHRL or NYCHRL................................................. 17

        3.  The Complaint Does Not Plausibly Plead Sexual Harassment.................18

    C.  The Complaint Does Not Plausibly Allege That the NYCHRL or NYSHRL applies to Conduct Taking Place Overseas. ........................................... 22

    D.  The EFAA Does Not Apply To Plaintiff's Retaliation Claims. .......................... 23

        1.  Plaintiff's retaliation claims do not constitute a sexual harassment dispute................................................................24

    E.  If There is a Plausible Sexual Harassment Dispute, The Court Should Compel The Remainder of Plaintiff's Claims To Arbitration........................................ 24

IV.  CONCLUSION....................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abeona Therapeutics, Inc. v. EB Research P'ship, Inc.*,
No. 18-cv-10889, 2019 WL 623864 (S.D.N.Y. Feb. 14, 2019) ...............................................11

*Ajaero v. S&P Global Inc.*,
No. 21-cv-7894, 2023 WL 2390723 (S.D.N.Y. Mar. 7, 2023)................................................23

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
672 F.3d 113 (2d Cir. 2011)......................................................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................................13

*Ballance v. Energy Transp. Corp.*,
No. 00-cv-09180, 2001 WL 1246586 (S.D.N.Y. Oct. 18, 2001)............................................19

*Banks v. GM, LLC*,
81 F.4th 242 (2d Cir. 2023) .....................................................................................................23

*Bell Atlantic v. Twombly*,
550 U.S. 544 (2007)..................................................................................................................13

*Bell v. Baruch Coll. — Cuny*,
No. 16-cv-8378, 2018 WL 1274782 (S.D.N.Y. Mar. 9, 2018)................................................18

*Bell v. Cendant Corp.*,
293 F.3d 563 (2d Cir. 2002)......................................................................................................10

*Brightman v. Physician Affiliate Grp. of N.Y., P.C.*,
No. 20-cv-4290, 2021 WL 1999466 (S.D.N.Y. May 19, 2021) ..............................................24

*Brown v. Henderson*,
257 F.3d 246 (2d Cir. 2001)......................................................................................................15

*Burns v. City of Utica*,
2 F. Supp. 3d 283 (N.D.N.Y. 2014)..........................................................................................18

*Carrasco v. Lenox Hill Hosp.*,
4 F. App'x 29 (2d Cir. 2001).....................................................................................................18

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001)....................................................................................................................9

*Cornelius v. CVS Pharm., Inc.*,
No. 23-cv-01858, 2023 WL 6876925 (D.N.J. Oct. 18, 2023) ...........................................14, 15

*Costello v. Paramount Glob., Inc.*,
   No. 23-CV-1553, 2024 U.S. Dist. LEXIS 17502 (S.D.N.Y. Feb. 1, 2024) ........................... 22

*Dowe v. Leeds Brown L., P.C.*,
   419 F. Supp. 3d 748 (S.D.N.Y. 2019) (Cote, J.), *aff'd sub nom. Dowe v. Leeds,
   Morelli & Brown PC*, No. 21-3069-CV, 2023 WL 3986373 (2d Cir. June 14,
   2023) ................................................................................................................................ 1

*Faith v. Khosrowshahi*,
   No. 21-cv-06913, 2023 WL 5278126 (E.D.N.Y., Aug. 16, 2023) ......................................... 14

*Finch v. N.Y. State Office of Children & Family Servs.*,
   No. 10-cv-9691, 2012 WL 2866253 (S.D.N.Y. May 30, 2012) .............................................. 22

*Fincher v. Depository Trust & Clearing Corp.*,
   604 F.3d 712 (2d Cir. 2010) ................................................................................................ 21

*Fletcher v. Kidder, Peabody & Co.*,
   81 N.Y.2d 623 (1993) ........................................................................................................... 9

*Genesco, Inc. v. T. Kakiuchi & Co.*,
   815 F.2d 840 (2d Cir. 1987) ................................................................................................ 9

*Germano v. Cornell Univ.*,
   2005 WL 2030355 (S.D.N.Y. Aug. 17, 2005) ...................................................................... 22

*Gerzhgorin v. Selfhelp Cmty. Servs., Inc.*,
   No. 22-808, 2023 WL 2469824 (2d Cir. Mar. 13, 2023) ...................................................... 17

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991) .............................................................................................................. 9

*Girardi v. Ferrari Express, Inc.*,
   No. 20-cv-4298-20, 2023 WL 2744027 (S.D.N.Y. Mar. 31, 2023) ....................................... 20

*Gray v. Onondaga-Cortland-Madison BOCES*,
   5:16-cv-0973, 2018 WL 1804694 (N.D.N.Y. Apr. 13, 2018) ................................................ 20

*Gregg v. N.Y. State Dep't of Tax'n & Fin.*,
   No. 94-cv-1408, 1999 WL 225534 (S.D.N.Y. Apr. 19, 1999) .............................................. 19

*Hartford Acc. And Indem. Co. v. Swiss Reins. America Corp.*,
   246 F.3d 219 (2d Cir. 2001) ................................................................................................ 10

*Henry v. Rising Ground*,
   No. 153458/2022, 2022 WL 2158368 (N.Y. Sup. Ct. Jun. 10, 2022) ................................... 17

*Howley v. Town of Stratford*,
   217 F.3d 141 (2d Cir. 2000)............................................................................15

*JBCholdings NY, LLC v. Pakter*,
   931 F. Supp. 2d 514 (S.D.N.Y. 2013)................................................................4

*Johnson v. Everyrealm, Inc.*,
   657 F. Supp. 3d 535 (S.D.N.Y. 2023)..............................................................25

*Kaye v. N.Y.C. Health & Hosps. Corp.*,
   No. 18-cv-12137, 2023 WL 2745556 (S.D.N.Y. Mar. 31, 2023)...........................23

*King v. Aramark Servs.*,
   96 F.4th 546 (2d Cir. 2024) ...........................................................................22

*Lamar v. Nynex Serv. Co.*,
   891 F. Supp. 184 (S.D.N.Y. 1995) ..................................................................19

*Latif v. Morgan Stanley & Co.*,
   No. 18-cv-11528, 2019 U.S. ...........................................................................10

*Leizerovici v. HASC Ctr., Inc.*,
   No. 17-cv-3603, 2018 WL 1115348 (E.D.N.Y. February 27, 2018)......................21

*Leroy v. Delta Air Lines*,
   No. 21-cv-00267, 2022 WL 12144507 (2d Cir. Oct. 27, 2022) ..................16, 17, 23

*Malena v. Victoria's Secret Direct, LLC*,
   886 F. Supp. 2d 349 (S.D.N.Y. 2012)..............................................................23

*Marciano v. DCH Auto Grp.*,
   14 F. Supp. 3d 322 (S.D.N.Y. 2014)................................................................11

*Menaker v. Hofstra Univ.*,
   935 F.3d 20 (2d Cir. 2019)........................................................................16, 17

*Mera v. SA Hosp. Grp., LLC*,
   675 F. Supp. 3d 442 (S.D.N.Y. 2023)..............................................................25

*Mucciarone v. Initiative, Inc.*,
   No. 18-cv-567, 2020 WL 1821116 (S.D.N.Y. Apr. 10, 2020) ........................17, 18

*Mwantuali v. Hamilton Coll.*,
   No. 6:22-cv-1395, 2024 WL 1219752 (N.D.N.Y. Mar. 20, 2024).........................23

*Nunez v. Citibank, N.A.*,
   No. 08-cv-5398, 2009 WL 256107 (S.D.N.Y. Feb. 3, 2009) ...............................10

*Oldroyd v. Elmira Sav. Bank, FSB*,
    134 F.3d 72 (2d Cir. 1998)................................................................11

*Patterson v. Raymours Furniture Co.*,
    96 F. Supp. 3d 71 (S.D.N.Y. 2015) ................................................11

*Pheng Vuong v. N.Y. Life Ins. Co.*,
    360 F. App'x 218 (2d Cir. 2010) ....................................................22

*Pitter v. Target Corp.*,
    No. 1:20-cv-00183, 2020 WL 8474858 (N.D.N.Y. Sept. 1, 2020)..........19

*Prince v. Cablevision Sys. Corp.*,
    No. 04-cv-8151, 2005 WL 1060373 (S.D.N.Y. May 6, 2005) ..............19

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*,
    991 F.2d 42 (2d Cir. 1993)................................................................9

*Quinn v. Green Tree Credit Corp.*,
    159 F.3d 759 (2d Cir. 1998), *abrogated in part on other grounds by Nat'l R.R.
    Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ..............................19

*Russo v. New York Presbyterian Hosp.*,
    972 F. Supp. 2d 429 (E.D.N.Y. 2013) ............................................21

*Saizhang Guan v. Uber Techs., Inc.*,
    236 F. Supp. 3d 711 (E.D.N.Y. 2017) ............................................11

*Savarese v. J.P. Morgan Chase*,
    No. 16-cv-321, 2016 WL 7167968 (E.D.N.Y. Nov. 16, 2016) ............11

*Shkoza v. Nyc Health*,
    No. 20-cv-3646, 2024 WL 1116145 (S.D.N.Y. Mar. 13, 2024).......20, 24

*Smith v. Tishman*,
    No. 1:21-cv-02915, 2022 WL 19410315 (S.D.N.Y. June 1, 2022) ........22

*Sui Chan v. New York City Transit Auth.*,
    No. 03-cv-6239, 2004 WL 1812818 (E.D.N.Y. July 19, 2004)............22

*Summa v. Hofstra Univ.*,
    708 F.3d 115 (2d Cir. 2013)........................................................15, 16

*Sutherland v. Ernst & Young LLP*,
    726 F.3d 290 (2d Cir. 2013)..............................................................9

*Swiderski v. Urban Outfitters, Inc.*,
    No. 14-cv-6307, 2017 WL 6502221 (S.D.N.Y. Dec. 18, 2017) ............15

*Tortorici v. Bus-Tev, LLC*,
    No. 17-cv-7507, 2021 U.S. ......................................................................................21

*Walters v. Starbucks Corp.*,
    623 F. Supp. 3d 333 (S.D.N.Y. 2022) ....................................................................10

*Wessinger v. OSI Rest. Partner's LLC*,
    No. 5:14-cv-00175, 2014 WL 5168702 (N.D.N.Y. Oct. 14, 2014) ........................19

*Whitt v. Prosper Funding LLC*,
    No. 1:15-cv-136, 2015 WL 4254062 (S.D.N.Y. July 14, 2015) .............................10

*Yost v. Everyrealm, Inc.*,
    657 F. Supp. 3d 563 (S.D.N.Y. 2023) .........................................................12, 13, 24

**Statutes**

9 U.S.C. § 1 ........................................................................................................................9

9 U.S.C. § 2 ........................................................................................................................9

9 U.S.C. §§ 3, 4 .........................................................................................................4, 9, 10

9 U.S.C. § 401(4) .........................................................................................................6, 12

9 U.S.C. § 402(a) ....................................................................................................6, 12, 25

Age Discrimination in Employment Act of 1967 .......................................................3, 5, 10

Civil Rights act of 1964 Title VII ........................................................................................5

Family Medical Leave Act....................................................................................3, 6, 25

Federal Arbitration Act .......................................................................................................9

N.Y. Exec. L. § 296(1)(h) .................................................................................................20

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .....................................................................12, 13

N.Y.C. Admin. Code § 8-101 et seq. ........................................................................ *passim*

Defendants TikTok Inc. ("TTI"), ByteDance Ltd. ("BDL"), and ByteDance Inc. ("BDI") (collectively, "Defendants") respectfully submit this Memorandum of Law in Support of their Motion to Compel Arbitration and stay this action. As set forth in detail below, Plaintiff Katie Ellen Puris ("Plaintiff") signed four valid and enforceable agreements that expressly provide for arbitration as the sole avenue for adjudicating claims such as those brought in this matter. Despite these valid agreements, Plaintiff commenced this action in the United States District Court for the Southern District of New York. Accordingly, Defendants respectfully request that this Court compel Plaintiff to pursue her claims via arbitration and stay the action.

## I. PRELIMINARY STATEMENT

On or around May 6, 2024, Plaintiff filed an Amended Complaint (ECF No. 21) ("Am. Compl.") that spans 104 pages and makes numerous unsupported allegations in her attempts to paint her poor performance and the ultimate termination of her employment by BDI as discriminatory. While Defendants believe, and are fully prepared to argue that Plaintiff's claims are without merit, such claims belong – if anywhere at all – in arbitration.

Plaintiff entered into not one, not two, but four valid and enforceable arbitration agreements, two of which are directly implicated by the claims Plaintiff brings herein. (*See* Declaration of Xu Ran dated July 19, 2024 ("Ran Decl.") Exs. A-B); (Declaration of Diana Wu dated July 19, 2024 ("Wu Decl.") Ex. A-B.[1]) It is clear that the arbitration agreements govern here.

Plaintiff, upon being hired by BDI, signed a "Hiring Bonus Repayment Agreement" (the "Onboarding Agreement") on November 26, 2019 in conjunction with her onboarding. (*See* Ran

---

[1] Courts considering a motion to compel arbitration apply a standard similar to summary judgment. Courts will consider all relevant, admissible evidence submitted by the parties, including affidavits. *See Dowe v. Leeds Brown L., P.C.*, 419 F. Supp. 3d 748, 756 (S.D.N.Y. 2019) (Cote, J.), *aff'd sub nom. Dowe v. Leeds, Morelli & Brown PC*, No. 21-3069-CV, 2023 WL 3986373 (2d Cir. June 14, 2023).

Decl. Ex. A.) The Onboarding Agreement contains a broad arbitration clause that covers "any dispute, controversy, or claim arising out of or relating from [Plaintiff's] employment with [BDI], including any alleged violation of statute, common law, or public policy . . . ." (*Id.* at 5-6.) Also, it makes clear that it applies to BDI and its "subsidiaries, affiliates, successors and assigns." (*Id.* at 1.) Given the nature of the claims Plaintiff asserts here, which are the direct result of her employment with BDI, the matter should proceed to arbitration under the Onboarding Agreement.[2]

Next, Plaintiff signed a "Statement Regarding Employee Confidentiality and Inventions Assignment Agreement" ("ECIA Agreement") on December 3, 2019. (*See* Ran Decl. Ex. B.) This agreement also contains an arbitration clause, which similarly covers "any dispute, controversy or claim arising out of or relating to or resulting from Employee's employment with Employer, including any alleged violation of statute, common law or public policy" and binds the parties to submit to final and binding arbitration. (*Id.* at 11-12.) This agreement also makes clear that the terms of the ECIA Agreement apply to and are binding on "Bytedance Inc. and its affiliates," here BDL and TTI. (*Id.* at 2.)

The intention of the parties is unequivocal: arbitration would be the exclusive forum to adjudicate claims arising from Plaintiff's employment with BDI, including those brought against affiliated entities with whom Plaintiff did not share an employment relationship.[3] Despite the

---

[2] Plaintiff was employed by BDI. Plaintiff was not employed by TTI or BDL, however, all arbitration agreements at issue contain clauses that cover BDI and its affiliates – here, TTI and BDL, and permit them to pursue arbitration to resolve any claims brought against them.

[3] Plaintiff also signed two "Restricted Share Units Award Agreements" ("RSUA Agreements"). (*See* Wu Decl. Ex. A-B.) These agreements between Plaintiff and BDL, signed on February 7, 2020 and July 1, 2021 respectively, expressly state that Plaintiff is "giving up certain rights otherwise afforded to [Puris] by civil court actions, including but not limited to the right to a jury trial, and state that Plaintiff "acknowledges and agrees that any dispute, controversy or claim arising out of or relating to the Plan, these Terms and Conditions or the Award Agreement, including any alleged violation of statute, common law or public policy shall be submitted to final and binding arbitration." (Wu Decl. Ex. A at 9, B at 11-12.)

Defendants do not assert that the RSUA Agreements are applicable here, given that the agreements apply specifically to "any dispute, controversy or claim arising out of or relating to the Plan or the Agreement." (*See* Wu Decl. Ex. A-B.) However, their inclusion is to demonstrate that Plaintiff entered into several agreements that contain

language in the agreements. Plaintiff is attempting to make an impermissible end run around her legal commitments and instead to litigate the purported merits of her employment claims through the media and in federal court. Such conduct should not be permitted.

While Plaintiff's claims are clearly subject to arbitration, the Amended Complaint contains a poorly plead allegation of sexual harassment. The sexual harassment allegation is included as a weak attempt to leverage the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (the "EFAA"), 9 U.S.C. §§ 401-02, to try to avoid arbitration. This blatant attempt to circumvent the spirit of the law and the language of the arbitration agreements must fail.

Plaintiff cannot avoid arbitration by tucking specious allegations of sexual harassment against a third party into a larger claim alleging sex discrimination. Despite the 104 pages utilized in the Amended Complaint, Plaintiff fails to **make out a "sexual harassment dispute" between her and any of the Defendants sufficient to avoid arbitration of her claims.** Instead, she brings nine causes of action: 1) sex and age discrimination pursuant to Title VII; 2) retaliation pursuant to Title VII; 3) discrimination on the basis of sex, disability, and age pursuant to the New York State Human Rights Law ("NYSHRL"); 4) retaliation pursuant to the NYSHRL; 5) discrimination on the basis of sex, disability, and age pursuant to the New York City Human Rights Law ("NYCHRL"); 6) retaliation pursuant to the NYCHRL; 7) interference with protected rights pursuant to the NYCHRL; 8) age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA"); and 9) interference pursuant to the Family Medical Leave Act ("FMLA"). None of the asserted claims intersect with, or are based on, allegations of sexual harassment.

---

arbitration clauses, and reviewed and signed contractual language that set arbitration as the dispute resolution process as a part of her employment with BDI.

Accordingly, Plaintiff's allegations concerning the conduct of a non-employee in a foreign country and beyond Defendants' control — and BDI's subsequent investigation of those allegations — cannot amount to a "sexual harassment dispute" under the EFAA. This Court should not entertain Plaintiff's attempts at circumventing her agreements to arbitrate, especially given that the allegations relating to sexual harassment cannot support a viable claim.

Defendants respectfully move this Court to compel arbitration pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(3) and the Federal Arbitration Act ("FAA") 9 U.S.C. §§ 3, 4.[4]

## II.    FACTUAL BACKGROUND

### A.    Plaintiff Joins BDI and Enters Into the Arbitration Agreements

Defendant TTI is a California corporation with its principal place of business in Los Angeles, California. Defendant BDI is a Delaware corporation with its principal place of business in San Jose, California. BDI is a U.S. technology company that, among other things, provides support to its affiliate TTI, a California incorporated company, which provides TikTok, a video-based entertainment platform in the U.S. BDI is an operating subsidiary of Defendant BDL, a privately held Cayman Island based corporation and ultimate parent entity of BDI.

In 2019, BDI hired Plaintiff as its Managing Director of Business Marketing in the United States. At the inception of her employment, Plaintiff and BDI entered into two arbitration agreements which each independently covers all of her claims in this action. (*See* Ran Exs. A -B.) The agreements provide that Plaintiff shall arbitrate any claims against BDI, and both agreements make clear the ability to compel arbitration applies with equal force to BDI parents and affiliates.

---

[4] As discussed herein, Plaintiff threw-in allegations in an attempt to circumvent the applicable agreements to arbitrate any and all claims related to her employment with BDI. That said, these allegations certainly do not cross the line from "possible" to "plausible." *See JBCholdings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 520 (S.D.N.Y. 2013) (quoting *Bell Atlantic v. Twombly,* 550 U.S. 544, 556 (2007)).

The Onboarding Agreement expressly states that it covers all claims "arising out of or relating to or resulting from [Plaintiff's] employment with the BDI, including any alleged violation of statute, common law or public policy" and that such claims "shall be submitted to final and binding arbitration." (*See* Ran Decl., Ex. A at 6.) The Onboarding Agreement specifies that "the Company" is defined to include any "subsidiaries, affiliates, successors and assigns," such as BDL and TTI. (*Id.* at 1.) Further, Plaintiff acknowledged the decision to arbitrate was "freely negotiated and [] mutually entered into between the parties." (*Id.* at 6.) In return, BDI offered employment as consideration for Plaintiff's acceptance of the arbitration agreement. (*Id.*) Plaintiff signed the Onboarding Agreement on November 26, 2019.

The ECIA Agreement likewise necessitates arbitration in this case. By signing that Agreement, Plaintiff agreed to arbitrate "any dispute, controversy or claim arising out of or relating to or resulting from Employee's employment with Employer, including any alleged violation of statute, common law or public policy." (*See* Ran Decl., Ex. B. at 11) Similarly, this Agreement defines Plaintiff's employer as BDI "and its affiliates," and expressly states that Plaintiff "acknowledges further that Employer's affiliates are intended beneficiaries of this Agreement." (*Id.* at 2, 12.) Here, BDL and TTI are clearly covered affiliates pursuant to the terms of the ECIA Agreement. Again, she acknowledged that the Agreement was "freely negotiated and … mutually entered into between the parties" and that she was "giving up certain rights otherwise afforded to Employee by civil court actions, including but not limited to the right to a jury trial." (*Id.* at 12)

### B.    Plaintiff's Allegations

Plaintiff filed the Amended Complaint on May 6, 2024, alleging various violations of Title VII of the Civil Rights act of 1964 ("Title VII"), the New York State Human Law, N.Y. Exec. Law § 296 et seq. ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"), the Age Discrimination in Employment Act of 1967

("ADEA"), and the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"). She contends that during the course of her employment, Defendants discriminated against her on the basis of her sex, disability, and age. Plaintiff further alleges that Defendants interfered with her protected rights. Such claims clearly fall within the scope of the Arbitration Agreements.

The sole issue affecting the arbitrability of Plaintiff's claims centers on complained-of conduct that occurred in a foreign country, involving an alleged perpetrator who was not employed by any of the Defendants, at an event that Defendants did not organize or have any control over, and BDI's response to Plaintiff's claims of sexual harassment. Ultimately, this allegation concerning sexual harassment at an event in a foreign country by a non-employee (and the events thereafter) cannot constitute a "sexual harassment dispute" within the meaning of the EFAA sufficient to bar arbitration. 9 U.S.C. § 401(4).

### 1. THE EFAA AND THE CANNES INCIDENT

In 2021, Congress enacted the EFAA to provide victims of sexual violence and harassment the option of maintaining certain lawsuits in court instead of arbitration. 9 U.S.C. §§ 401-02. The EFAA states that: "Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or sexual harassment dispute." 9 U.S.C. § 402(a). The law defines a "sexual harassment dispute" as a matter "relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). Plaintiff cannot take advantage of this law because she does not allege a viable sexual harassment dispute.

In the Amended Complaint, Plaintiff does not specifically allege a sexual harassment dispute against any of the Defendants. Instead, she recounts an incident that occurred on June 21,

2022, at an event in Cannes, France. This event was organized by a third-party, Zenith Worldwide ("Zenith"), during which an employee of Zenith is alleged to have behaved inappropriately toward her. (Am. Compl. ¶¶ 387-406.) Specifically, she alleges a Zenith employee, Christian Lee, ("Lee") "became increasingly intoxicated and moved to sit next to [Plaintiff] in such a way that he blocked her from moving away from him." (*Id.* at ¶ 389.) She added that Lee was "slurring his speech, spilled an entire glass of wine on [Plaintiff's] plate, and began repeatedly touching [Plaintiff's] arm, asking her where to party after the dinner and where they could go dancing." (*Id.*) Plaintiff further alleges that she was "incredibly uncomfortable" with Lee's behavior, that several people at the table tried to distract Lee to divert his attention from Plaintiff, and ultimately, another worker helped her leave the event. (*Id.* at ¶¶ 390-91.)

Critically, Plaintiff does not allege that Defendants co-sponsored or had any control over the dinner event with Zenith. Plaintiff fails to allege that Lee was an employee of any of the Defendants (which he is not), or that Defendants had any control of Lee, his employment, or his behavior. In fact, the Amended Complaint acknowledges that Lee was "Zenith's managing director," a fairly senior position in another, unrelated, company. (*Id.* at ¶ 389.)

The day after the incident, on June 22, 2022, Plaintiff reported the incident to her supervisor, Zuber Mohammed ("Mohammed"). (*Id.* at ¶ 393.) That same day, per the Amended Complaint, Mohammed assured her that her concerns would be addressed. (*Id.* at ¶ 394.) Accordingly, that same day, Plaintiff met with Mohammed and Jana Ulaite, the Head of Marketing in Europe, and Plaintiff received a message from Wendy Jimenez, a Global Human Resources Business Partner, who requested a time to meet via video call. (*Id.* ¶¶ 394-95.) The matter was then turned over to the internal Ethics team at BDI. (*Id.* at ¶ 396.) Within approximately two weeks of Plaintiff's initial report, on July 8, 2022, Plaintiff was informed that Zenith had been requested

to "ensure that Lee did not participate in future TikTok meetings or business." (*Id.* at ¶ 406.) Ultimately, Plaintiff was informed on July 29, 2022 that Lee was "actually being removed from supporting the TikTok account." (*Id.* at ¶ 406.)

The total duration of the investigation, from beginning to end, took approximately two weeks. Plaintiff met with senior leadership the day she made her complaint, and the investigation was handled by the Ethics team. Further, Lee was removed from supporting the TTI account, and per the Amended Complaint, Plaintiff had no further business interactions with Lee while employed by BDI.

Plaintiff claims Defendants did not take appropriate measures – an allegation belied by her own Amended Complaint.[5] She does not allege the investigation was handled differently because of her sex.

Months after the investigation's conclusion, on September 23, 2022, Plaintiff claims that she "expressed concerns about the treatment of women at TikTok, age discrimination, the sexual harassment at Cannes Lion and the overall work environment." (*Id*. ¶ 407.) She vaguely claims she expressed concern over "the way TikTok handled the sexual harassment incident at Cannes Lion," but did not identify the specific issues with the investigation. (*Id.*) Instead, she states, without detail, that the investigation failed to take "appropriate" action. (*See* Am. Compl. IX.)

---

[5] Plaintiff fails to articulate how BDI ought to have proceeded. By her own admission, her manager met with her the day she reported the incident and assured her that the Zenith employee would not be in attendance at an event on June 22, 2022. (Am. Compl. ¶¶ 397-398.) Further, she does not allege any Defendants maintained any direct or indirect control over Zenith or its employees.

III.    ARGUMENT

   A.    **Pursuant To The FAA, Plaintiff's Claims Should Be Arbitrated Because She Entered Into Valid Written Agreements That Cover Her Claims.**

The Federal Arbitration Act ("FAA") requires courts to enforce arbitration agreements, reflecting the federal policy favoring arbitration as an alternative dispute resolution process. *See* 9 U.S.C. § 1 *et seq.*; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24-25 (1991); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); *Fletcher v. Kidder, Peabody & Co.*, 81 N.Y.2d 623, 630-31 (1993) (noting that the FAA preempts state law on the subject of the enforceability of arbitration clauses) (citations omitted). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed [in] arbitration on issues as to which an arbitration agreement has been signed." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987).

Thus, the validity of the arbitration agreements is analyzed under the FAA. *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 295-96 (2d Cir. 2013). Under the FAA, a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A two-part test determines whether a claim is subject to arbitration: "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.,* 672 F.3d 113, 128 (2d Cir. 2011) (citing *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002)). The party seeking to enforce an arbitration agreement must satisfy both elements by an "ordinary preponderance of the evidence standard." *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993). As set forth below, in the case at hand, both elements are easily satisfied.

      1.     PLAINTIFF ENTERED INTO VALID AND ENFORCEABLE ARBITRATION AGREEMENTS.

Whether the parties have entered into a valid agreement to arbitrate is determined by ordinary principles of state contract law. *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) ("Because an agreement to arbitrate is a creature of contract . . . the ultimate question of whether the parties agreed to arbitrate is determined by state law" concerning the formation of contracts); *Whitt v. Prosper Funding LLC*, No. 1:15-cv-136, 2015 WL 4254062, at *1 (S.D.N.Y. July 14, 2015) (concluding arbitration agreement was enforceable under New York contract law and granting motion to compel arbitration of disability claims under the ADA and the corresponding state and city law).

"Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *Nunez v. Citibank, N.A.*, No. 08-cv-5398, 2009 WL 256107, at *2 (S.D.N.Y. Feb. 3, 2009); *see Hartford Acc. And Indem. Co. v. Swiss Reins. America Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (holding where "the existence of an arbitration clause is undisputed, doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability"). Courts in the Southern District of New York have consistently enforced arbitration agreements in the employment context under the FAA. *Walters v. Starbucks Corp.*, 623 F. Supp. 3d 333, 337 (S.D.N.Y. 2022); *Latif v. Morgan Stanley & Co.*, No.: 18-cv-11528, 2019 U.S. WL 2610985, at *3 (S.D.N.Y. June 26, 2019).

Plaintiff cannot dispute that she agreed to arbitrate claims arising from her employment. Plaintiff assented to the Arbitration Agreements by signing them on November 26, 2019 and

December 3, 2019.[6] The agreements are supported by consideration – namely, BDI's job offer and signing bonus, continued employment, and the parties' mutual promises to arbitrate their claims. *See Abeona Therapeutics, Inc. v. EB Research P'ship, Inc.*, No. 18-cv-10889, 2019 WL 623864, at *4 (S.D.N.Y. Feb. 14, 2019) ("[M]utual promises to arbitrate constitute[] consideration sufficient to support [an] arbitration agreement.") (quotations and citation omitted). *See Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 337 (S.D.N.Y. 2014) (arbitration agreement by itself was sufficient consideration because "it mutually binds both parties to submit claims exclusively to arbitration"); *Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71, 76-77 (S.D.N.Y. 2015) (continued employment is adequate consideration for an agreement to arbitrate). Further, both agreements contain language that make clear that the Onboarding Agreement and the ECIA Agreement's arbitration clauses apply in equal force not only to Plaintiff's employer, BDI, but to its ultimate parent and affiliates – namely, BDL and TTI, respectively. Ultimately, Plaintiff's claims against BDI, BDL, and TTI are covered by the Arbitration Agreements here. (Ran Decl. Exs. A-B.)

All of the claims in the Amended Complaint relate to Plaintiff's employment. Plaintiff's claims are therefore unquestionably subject to arbitration and there is no way to overcome the presumption of arbitrability. *See, e.g., Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998) ("[W]e have held that the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration

---

[6] Plaintiff signed the ECIA Agreement electronically on December 3, 2019. Agreements that are entered into electronically are valid and enforceable. *See Savarese v. J.P. Morgan Chase*, No. 16-cv-321, 2016 WL 7167968, at *5 (E.D.N.Y. Nov. 16, 2016), *report and recommendation adopted*, No. 16-cv-321, 2016 WL 7176601 (E.D.N.Y. Dec. 7, 2016) (compelling arbitration where plaintiff electronically signed offer letter containing arbitration provision); *Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 722 (E.D.N.Y. 2017) ("[t]he making of contracts over the internet 'has not fundamentally changed the principles of contract'") (internal citations omitted). By signing electronically, Plaintiff consented to the terms of the contract.

clause is not susceptible of an interpretation that [it] covers the asserted dispute"). Accordingly, Plaintiff should be compelled to arbitrate her claims.

### B.    The EFAA Does Not Preclude Arbitration in this Matter

The arbitration agreements here compel Plaintiff to submit to arbitration. The only remaining question is whether the EFAA precludes arbitration based on Plaintiff's purported claim of sexual harassment.

The EFAA does not bar enforcement of the arbitration agreements for at least four reasons: (1) Plaintiff did not specifically plead a sexual harassment claim or dispute against Defendants; (2) Plaintiff cannot impute liability onto Defendants for the acts of a non-employee as to state a viable claim; (3) even if she could impute liability onto Defendants, she does not state a plausible claim of sexual harassment under any statute; and (4) the sexual harassment retaliation claim cannot stretch the definition of "sexual harassment dispute" to include making protected complaints about Defendants' handling of a sexual harassment investigation. In the alternative, should the Court determine that the sexual harassment claim may proceed, Defendants respectfully request the Court sever the rest of the unrelated claims and compel them to arbitration.

As discussed above, the EFAA provides: "no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." *See* 9 U.S.C. § 402(a). A "sexual harassment dispute" is defined as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). To qualify as a "sexual harassment dispute" under the EFAA, the sexual harassment claim must be sufficiently pled to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 577 (S.D.N.Y. 2023) (analyzing the plaintiff's sexual harassment claims pursuant to the standards of a motion to dismiss to determine if the EFAA

applies to the lawsuit). Requiring the sexual harassment claim to be capable of surviving a Rule 12(b)(6) motion vindicates the statute's purpose of providing sexual harassment claimants with a judicial forum while also respecting the FAA's well-established mandate that favors arbitration. *Id.* at 586.

For Plaintiff's purported sexual harassment claim to preclude arbitration here, her Amended Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim becomes facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the *defendant is liable for the misconduct alleged.*" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of "entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

Ultimately, Plaintiff fails to bring a viable sexual harassment claim that would survive a motion to dismiss. This failure dooms any attempt to rely on the EFAA to prevent arbitration here.

1.  PLAINTIFF DOES NOT EXPRESSLY ASSERT A SEXUAL HARASSMENT CLAIM AGAINST ANY DEFENDANT.

As a preliminary matter, it is not clear what specific claims, if any, Plaintiff alleges in relation to the Cannes incident as relates to Defendants here. Should Plaintiff wish to seek recourse for her purported claims of sexual harassment, Zenith, not Defendants, would be the proper party against whom to do so. Despite Plaintiff directing her claims against the wrong entities generally, the Amended Complaint specifically fails to state any basis for a sexual harassment claim against BDL and TTI, that are not alleged to have played any role with respect to the Cannes incident or

its subsequent investigation.[7] Indeed, part of Plaintiff's tactics seem to be the inappropriate conflation of the allegations concerning the Cannes incident with her broader discrimination claims to muddy the waters against the unrelated entities - namely BDL and TTI.

"Notably, for the purposes of a Title VII claim, sex discrimination differs from sexual harassment." *Cornelius v. CVS Pharm., Inc.*, No. 23-cv-01858, 2023 WL 6876925, at *3 (D.N.J. Oct. 18, 2023); *Faith v. Khosrowshahi*, No. 21-cv-06913, 2023 WL 5278126, at *10 n. 5, (E.D.N.Y., Aug. 16, 2023) (plaintiff's allegations of employment discrimination under Title VII and the NYSHRL are not a "sexual harassment dispute or sexual assault dispute" that would trigger the EFAA's provisions).

Nowhere in the Amended Complaint does Plaintiff charge *Defendants* with sexual harassment – because she cannot do so. Lee, the alleged harasser, was not an employee of Defendants and was not under Defendants' control. The event where the alleged sexual harassment took place was sponsored by Zenith, and not by Defendants. Plaintiff fails to allege that Defendants had any control whatsoever over the environment, over Lee, or encouraged or condoned the behavior. In fact, the opposite is true. When Plaintiff reported the behavior, BDI immediately set up several meetings with Plaintiff, launched an internal investigation, and ultimately the alleged harasser was removed from any TTI work. (Am. Compl. ¶¶ 393-406.)

It is absurd for Plaintiff, who was readily able to identify her purported harasser *and* his employer, to now try and re-assign liability for these events to Defendants, when Defendants did not have the ability to control the employee of another company. In fact, Plaintiff does not claim or allege that Defendants "engaged in unwelcomed sexual advances or behavior motivated by

---

[7] Plaintiff further fails to explain how she purports to maintain a claim for sexual harassment against BDL, which is an entity that has no employees.

sexual desire." *Cornelius*, 2023 WL 6876925 at *4. Plaintiff, without maintaining a specifically pled sexual harassment claim against her employer, cannot avail herself of the EFAA.

    2.    <u>Plaintiff Cannot Attribute the Acts of a Non-Employee to her Employer Pursuant to Title VII.</u>

Plaintiff cannot maintain a sexual harassment claim under Title VII against Defendants. In fact, her allegations regarding her purported sexual harassment make no reference to BDL at all, and makes no allegations of impropriety by TTI. Because Plaintiff fails to allege that any *Defendant*, or employee thereof, actually sexually harassed her, the only way for her claims of sexual harassment to proceed is pursuant to a theory of third-party liability.

To prevail on a Title VII hostile work environment for the acts of a non-employee, Plaintiff must show that (1) "the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and (2) "a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Howley v. Town of Stratford*, 217 F.3d 141, 153-54 (2d Cir. 2000). Additionally, Plaintiff must show that the conduct occurred *because of* her sex. *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). This she cannot do.

    a.    <u>Plaintiff Dooms Her Title VII Claim By Failing to Plead Control And Negligence.</u>

Under Title VII, courts evaluate employer liability for harassment by non-employees according to the same standards as non-supervisory employees. *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013) (citing *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009)); *Swiderski v. Urban Outfitters, Inc.*, No. 14-cv-6307, 2017 WL 6502221, at *7 (S.D.N.Y. Dec. 18, 2017) (citing *Summa* and applying the NYSHRL standard set forth in *Summa* to the plaintiff's NYCHRL claim). Accordingly, the Court should "consider the extent of the employer's control and any other legal

responsibility which the employer may have with respect to the conduct of such non-employees."
*Summa*, 708 F.3d at 124.

Generally, an employer will only be held liable for its own negligence. *Id.* However,
*Summa* made clear that a "plaintiff must demonstrate that the employer failed to provide a
reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have
known, about the harassment yet failed to take appropriate remedial action," for a Title VII claim
to succeed on a non-employee theory of liability. *Id.* (internal quotation marks omitted). The
Second Circuit then elaborated on the *Summa* standard to provide that "the conduct of certain non-
employees may be imputed to the employer where (1) the employer exercises a high degree of
control over the behavior of the non-employee, and (2) the employer's own negligence permits or
facilitates that non-employee's discrimination." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 38-39 (2d
Cir. 2019) (internal quotation marks omitted); *see also Leroy v. Delta Air Lines*, No. 21-cv-00267,
2022 WL 12144507, at *3 (2d Cir. Oct. 27, 2022) (Summary Order). [8]

Plaintiff does not allege any Defendants maintained control over Zenith, its employees, or
the alleged harasser. Indeed, the Amended Complaint does not describe the relationship, if any,
between Zenith and the Defendants. Rather, Plaintiff, in the Amended Complaint, briefly mentions
that Zenith is an advertising agency, and it sponsored a dinner during the Cannes Lions industry
event. (Am. Compl. ¶ 388.) Furthermore, nothing in the Amended Complaint indicates the
Defendants' own negligence permitted or facilitated the non-employee harasser's alleged

---

[8] Plaintiff has not, and cannot demonstrate that her employer, BDI, or any Defendants acted negligently. BDI had
no notice or prior warning that Lee, a non-employee, would act inappropriately at an event sponsored by Zenith, over
whom Defendants had no control. Further, once BDI had been informed of the events of June 21, 2022 by Plaintiff it
immediately launched an investigation and requested and received Lee's removal from "supporting the TikTok
account." (Am. Compl. ¶ 406.) Further, the next day, when it came to BDI's attention that Plaintiff would be attending
a Zenith session, which it had no control over, it warned Plaintiff that Lee would likely be in attendance. Neither BDI
nor any Defendant had the ability or authority to stop Lee from attending an event it did not control, and so it did the
only thing it could at that time – warned Plaintiff that Lee likely would attend.

discriminatory conduct. *Menaker v. Hofstra Univ.*, 935 F.3d 20, 38-39 (2d Cir. 2019); *see also Leroy*, 2022 WL 12144507, at *3. Without credible allegations and evidence of control over either Zenith or the alleged harasser or a threshold demonstration of the Defendants' negligence, Plaintiff cannot attribute the third-party non-employee's conduct to Defendants and hold them liable for sexual harassment as a matter of law.

        b.    <u>Plaintiff Cannot Credibly Allege that Defendants are Liable for a Non-Employee's Sexual Harassment Under the NYSHRL or NYCHRL.</u>

Plaintiff's claims of sexual harassment pursuant to the NYSHRL and NYCHRL similarly fail, assuming that they were applicable to the conduct in Cannes alleged in the Amended Complaint. Even under the more liberal standard of the NYSHRL and the NYCHRL, Plaintiff still fails to set forth a viable sexual harassment claim given her inability and failure to allege Defendants had any control over Zenith or Lee.

The law is clear that "[c]onduct directed entirely toward non-employees generally cannot be characterized as an unlawful employment practice by an employer." *Gerzhgorin v. Selfhelp Cmty. Servs., Inc.*, No. 22-808, 2023 WL 2469824, at *1 (2d Cir. Mar. 13, 2023). The NYCHRL "eliminated the requirement that the claimed hostile work environment be severe and pervasive … [but it] did not expand the scope of employer or supervisor liability for the actions of a non-employee." *Mucciarone v. Initiative, Inc.*, No. 18-cv-567, 2020 WL 1821116, at *10 (S.D.N.Y. Apr. 10, 2020). In fact, courts in this Circuit have "applied the Second Circuit's Title VII standard for non-employees to evaluate liability for harassment by a non-employee," to NYCHRL claims, and so Defendants will do so here. *Id.*

Plaintiff makes no allegations that her employer, BDI, specifically, or any Defendants, generally, here had *any* control over Lee's behavior or over Zenith's event. *See also Mucciarone*, 2020 WL 1821116, at *10; *Henry v. Rising Ground*, No. 153458/2022, 2022 WL 2158368, at *8

(N.Y. Sup. Ct. Jun. 10, 2022) (guest of vendor was neither an employee nor agent of the employer, thus, the employer could not be held liable under the NYCHRL).

Ultimately, "[t]he standards for evaluating the actions of [the employer] in the Title VII context apply with equal force to the NYCHRL claim," and Defendants rely on the arguments made in its Title VII analysis above. *Mucciarone*, 2020 WL 1821116, at *11. Thus, the Court should decline any attempt to extend potential liability to Defendants for the acts of Zenith's employee under the NYSHRL and NYCHRL.

### 3. THE COMPLAINT DOES NOT PLAUSIBLY PLEAD SEXUAL HARASSMENT Under Any Statute.

Even if the Court concludes that the alleged harassment incident can be imputed to the Defendants, that is not, by itself, enough to maintain a sexual harassment claim under any statute and the claim still fails, as a matter of law.

"[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Burns v. City of Utica*, 2 F. Supp. 3d 283, 291 (N.D.N.Y. 2014) (internal citations and quotations omitted). However, "[t]he only basis for a Title VII sexual harassment action is harassment that is sexual in nature." *Carrasco v. Lenox Hill Hosp.*, 4 F. App'x 29, 30 (2d Cir. 2001). Accordingly, a Title VII sexual harassment claim requires "a showing [1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Id.* (internal citations omitted). "Generally, unless an incident of harassment is sufficiently severe, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Bell v. Baruch Coll. — Cuny*, No. 16-cv-8378, 2018 WL 1274782, at *5 (S.D.N.Y. Mar. 9, 2018) (internal citations and quotations omitted). Plaintiff cannot plausibly assert that

nonsexual touching of one's arm constitutes the type of severe and pervasive conduct that is actionable under Title VII.

Several courts have dismissed cases on a motion to dismiss or summary judgment where plaintiffs allege physical touching. *See, e.g., Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998), *abrogated in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (two alleged incidents involving an explicit sexual remark and inappropriate, deliberate touching did not establish a hostile work environment). The conduct alleged here does not rise to the level of sexual harassment under Title VII. *See Pitter v. Target Corp.*, No. 1:20-cv-00183, 2020 WL 8474858, at *8 (N.D.N.Y. Sept. 1, 2020); *Wessinger v. OSI Rest. Partner's LLC*, No. 5:14-cv-00175, 2014 WL 5168702, at *8 (N.D.N.Y. Oct. 14, 2014) (holding allegations that supervisor gave plaintiff a back and shoulder rub twice failed to plausibly suggest sexual harassment severe or pervasive enough to alter the conditions of her employment and create an abusive working environment); *Prince v. Cablevision Sys. Corp.*, No. 04-cv-8151, 2005 WL 1060373, at *9 (S.D.N.Y. May 6, 2005) (refusing to find hostile work environment where co-worker attempted to kiss plaintiff, solicit her for sex, and made additional inappropriate sexual comment pursuant to Title VII); *Ballance v. Energy Transp. Corp.*, No. 00-cv-09180, 2001 WL 1246586, at *2, 11 (S.D.N.Y. Oct. 18, 2001) (failure to state a claim for hostile work environment based on a single incident of a colleague touching plaintiff's buttocks and untying her apron); *Gregg v. N.Y. State Dep't of Tax'n & Fin.*, No. 94-cv-1408, 1999 WL 225534, at *12 (S.D.N.Y. Apr. 19, 1999) (approximately four instances of allegedly offensive touching, and repeated invitations to meals over three to four months were not "sufficiently severe or pervasive"); *Lamar v. Nynex Serv. Co.*, 891 F. Supp. 184, 185 (S.D.N.Y. 1995) (touching plaintiff's hand and saying she looked "hot" and staring at her was "too mild and innocuous to constitute sexual harassment

as a matter of law"); *see also Gray v. Onondaga-Cortland-Madison BOCES*, 5:16-cv-0973, 2018 WL 1804694, at *2 (N.D.N.Y. Apr. 13, 2018) (holding that plaintiff must describe "[t]he impermissible character of the underlying conduct must be stated in order to permit an inference that it rises to the level of sexual harassment," and dismissing the complaint because the plaintiff's "vague[]" and "conclusory" allegations of "unspecified conduct" failed to sufficiently allege a claim of sexual harassment in violation of Title VII).

Similarly, Plaintiff is not able to establish a sexual harassment claim under NYSHRL and NYCHRL. While the 2019 amendments to the NYSHRL moved "the standard for sustaining claims under the NYSHRL closer to the standard under the NYCHRL," *Girardi v. Ferrari Express, Inc.*, No. 20-cv-4298-20, 2023 WL 2744027, at *4 (S.D.N.Y. Mar. 31, 2023), plaintiff is still required to show that she has been subject to "inferior terms, conditions or privileges of employment because of the individual's membership in one or more of the[] protected categories." N.Y. Exec. L. § 296(1)(h). In this case, Plaintiff is required to show that the complained of conduct was based on her gender and sexual in nature.

Under the NYCHRL Plaintiff is required to show that she was subjected to "unwanted gender-based conduct." *Girardi,* 2023 WL 2744027, at *5. On a sexual harassment claim, a plaintiff is required to show that the gender-based conduct is of a sexual nature. Plaintiff makes no allegations that can support her claim that she was the victim of sexual harassment under either the NYSHRL or the NYCHRL. *Shkoza v. Nyc Health*, No. 20-cv-3646, 2024 WL 1116145, at *7 (S.D.N.Y. Mar. 13, 2024) (noting that "[c]ourts have thus found isolated incidents of . . . physical conduct to be the type of petty slights and trivial inconveniences that do not establish a NYCHRL claim") (internal citations and quotations omitted).

Plaintiff fails to allege that she was the victim of any sexual touching. Plaintiff's Amended Complaint states that she sat next to a non-employee of Defendants at a dinner, in public, with several of her coworkers surrounding her, where Lee touched her arm and asked where to party and go dancing after dinner. Lee's behavior may have been inappropriate, but it does not rise to the level of sexual harassment under any of the identified statutes at issue.

Moreover, Plaintiff fails to allege that her interactions with Lee were based on her gender, or provide any other viable rationale that would permit this Court to infer or conclude that she was the victim of gender-based conduct of a sexual nature. *See Tortorici v. Bus-Tev, LLC,* No. 17-cv-7507, 2021 U.S. WL 4177209, at \*14 (S.D.N.Y. Sept. 14, 2021) (NYCHRL claim dismissed as six lewd and inappropriate comments to plaintiff were insufficient to adduce evidence that comments targeted plaintiff because of plaintiff's gender); *Russo v. New York Presbyterian Hosp.*, 972 F. Supp. 2d 429, 453 (E.D.N.Y. 2013) (granting summary judgment on NYCHRL hostile work environment claim because the comments and actions, while difficult to deal with, did not raise a genuine issue of fact as to whether the plaintiff was discriminated against because of her gender); *Leizerovici v. HASC Ctr., Inc.*, No. 17-cv-3603, 2018 WL 1115348, at \*11-12 (E.D.N.Y. February 27, 2018) (dismissing gender based hostile work environment claim under the NYCHRL on a motion to dismiss because the defendant's comments, while sexually explicit and vulgar, were not driven by a discriminatory animus against plaintiff's protected characteristic).

Further, even if BDI conducted a delayed and slipshod investigation, which it did not, failure by an employer to conduct an effective investigation is not itself sexual harassment. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 724 (2d Cir. 2010) ("[Federal] courts (including district courts in this circuit) appear to have uniformly rejected the notion that a failure adequately to remediate sexual harassment itself constitutes an act that may contribute to a hostile

work environment claim."); *Sui Chan v. New York City Transit Auth.*, No. 03-cv-6239, 2004 WL 1812818, at *5 (E.D.N.Y. July 19, 2004); *see also Costello v. Paramount Glob., Inc.*, No. 23-CV-1553, 2024 U.S. Dist. LEXIS 17502, *10-11 (S.D.N.Y. Feb. 1, 2024) (sex discrimination claim including allegations of investigation into sexual harassment did not preclude enforcing arbitration agreement).

Thus, even viewing Plaintiff's allegations under the most favorable light, Plaintiff cannot maintain a claim for sexual harassment. Accordingly, the EFAA does not preclude arbitration here.

**C.    The Complaint Does Not Plausibly Allege That the NYCHRL or NYSHRL applies to Conduct Taking Place Overseas.**

Courts in this Circuit have held that a "plaintiff cannot bring a cause of action under the NYCHRL for conduct which took place outside of New York City." *Finch v. N.Y. State Office of Children & Family Servs.*, No. 10-cv-9691, 2012 WL 2866253, at *10 (S.D.N.Y. May 30, 2012); *see Smith v. Tishman*, No. 1:21-cv-02915, 2022 WL 19410315, at *5 (S.D.N.Y. June 1, 2022). *See also Pheng Vuong v. N.Y. Life Ins. Co.*, 360 F. App'x 218, 221 (2d Cir. 2010); (affirming the dismissal of NYCHRL claims when "there is no evidence in the record that any discriminatory decisions related to Plaintiff's employment with Defendant were made in New York City."); *Germano v. Cornell Univ.,* 2005 WL 2030355, at *4 (S.D.N.Y. Aug. 17, 2005) ("To state a claim under NYCHRL, [plaintiff] must allege that defendants intentionally discriminated against them within New York City" (citations omitted)).

Further, both the NYSHRL and the NYCHRL only apply to conduct with an impact on New York and New York City employment. Plaintiff cannot plausibly allege that the Cannes incident (a single occurrence with no additional encounter with the alleged harasser) impacts New York or New York City employment in any way. *See King v. Aramark Servs.*, 96 F.4th 546, 556-57 (2d Cir. 2024) (affirming the dismissal of NYSHRL claims when the underlying allegedly

discriminatory conduct occurred outside of New York even when Plaintiff worked remotely in New York).

> **D.      The EFAA Does Not Apply To Plaintiff's Retaliation Claims.**

To make out a *prima facie* retaliation case under Title VII, the Plaintiff "must show that (1) she was engaged in protected activity, (2) her employer, BDI, was aware of that activity, (3) Plaintiff suffered a materially adverse action, and (4) there was a causal connection between the protected activity and that adverse action." *Ajaero v. S&P Global Inc.*, No. 21-cv-7894, 2023 WL 2390723, at *10 (S.D.N.Y. Mar. 7, 2023).

Before 2019, retaliation claims under Title VII and the NYSHRL were generally evaluated under the same standard. *Banks v. GM, LLC*, 81 F.4th 242, 275 (2d Cir. 2023); *see Mwantuali v. Hamilton Coll.*, No. 6:22-cv-1395, 2024 WL 1219752, at *19 (N.D.N.Y. Mar. 20, 2024). "While New York courts have not yet produced any substantive analysis of how this amendment changes standards of liability under the NYSHRL, courts in this District have interpreted the amendment as rendering the standard for claims closer to the [broader] standard of the New York City Human Rights Law." *Kaye v. N.Y.C. Health & Hosps. Corp.*, No. 18-cv-12137, 2023 WL 2745556, at *17 (S.D.N.Y. Mar. 31, 2023).

"To prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Leroy*, 2022 WL 12144507, at *2 (citation omitted). Although the NYCHRL is "slightly more solicitous of retaliation claims" than the standard articulated above, to survive a motion to dismiss the plaintiff must plead facts giving rise to an inference of a causal connection between the plaintiff's protected activity and an adverse employment action. *Malena v. Victoria's Secret Direct, LLC*, 886

F. Supp. 2d 349, 362 (S.D.N.Y. 2012); *see Brightman v. Physician Affiliate Grp. of N.Y., P.C.*, No. 20-cv-4290, 2021 WL 1999466, at *10 (S.D.N.Y. May 19, 2021).

Here, Plaintiff's retaliation claims must fail under Title VII, the NYSHRL, and the NYCHRL because the conduct at issue does not rise to the level of sexual harassment. *See Shkoza*, 2024 WL 1116145, at *7 (dismissing Title VII, NYSHRL, and NYCHRL retaliation cases when no reasonable juror could conclude the plaintiff had experienced sexual harassment when plaintiff alleged someone touched her shoulder, and subsequently she had no plausible belief that would support protected activity).

Accordingly, Plaintiff cannot rely on her retaliation claims to prevent arbitration here pursuant to EFAA.

      1.      PLAINTIFF'S RETALIATION CLAIMS DO NOT CONSTITUTE A SEXUAL HARASSMENT DISPUTE.

Plaintiff's retaliation claim cannot independently constitute a "sexual harassment dispute" under the EFAA. As described above, Plaintiff's alleged complaint was simply not about unlawful conduct pursuant to Title VII, the NYSHRL, or the NYCHRL. Indeed, construing such a complaint as sufficient to constitute a retaliation claim would eradicate the readily adopted holding in *Yost* – that a sexual harassment claim must be plausibly pled. *Yost*, 657 F. Supp. 3d at 577. To permit a plaintiff to sidestep that standard by simply pleading a retaliation claim connected to a complaint about sexual harassment – especially here where there is no viable claim for sexual harassment – would violate the spirit of the law.

**E.    If There is a Plausible Sexual Harassment Dispute, The Court Should Compel The Remainder of Plaintiff's Claims To Arbitration.**

Finally, assuming, *arguendo*, the Court finds that the Plaintiff alleges a plausible sexual harassment dispute, the remainder of the claims ought to be severed and compelled to arbitration. In fact, BDL and TTI face no allegations specific to sexual harassment in this matter, and should

proceed to arbitration pursuant to the valid agreements here. An arbitration agreement executed by an individual alleging conduct constituting a sexual harassment dispute is unenforceable only to the extent that the case filed by such individual "relates to" the sexual harassment dispute. *See* 9 U.S.C. § 402(a). That is to say, the EFAA only applies to the claims in the case that relate to the sexual harassment dispute. *Mera v. SA Hosp. Grp., LLC*, 675 F. Supp. 3d 442, 447 (S.D.N.Y. 2023) (finding that plaintiff's wage and hour claims bore no relation to the sexual harassment dispute and granting motion to compel arbitration on those claims). Plaintiff's age and disability discrimination claims, in addition to her FMLA claim, are too "far afield." *See Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 562 n.23 (S.D.N.Y. 2023). Thus, at a minimum, these claims should proceed to arbitration.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion, order that Plaintiff's claims be submitted to arbitration, and stay this action.

Dated: July 19, 2024                                SEYFARTH SHAW LLP


By:  */s/ Ivan D. Smith*
    Ivan D. Smith
    Maureen Stampp
    Amanda Williams
    620 Eighth Avenue
    New York, New York 10018-1405
    (212) 218-5500
    idsmith@seyfarth.com
    mstampp@seyfarth.com
    amwilliams@seyfarth.com

    *Attorneys for Defendants TikTok Inc.,*
    *ByteDance Ltd., and ByteDance Inc.*