**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KATIE ELLEN PURIS,<br><br>Plaintiff,<br><br>v.<br><br>TIKTOK INC., BYTEDANCE LTD., BYTEDANCE INC., DOUYIN CO. LTD; and LIDONG ZHANG,<br><br>Defendants. | Civil Case No.: 24 CV 944 (DLC) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS DOUYIN CO. LTD AND LIDONG ZHANG'S MOTION TO DISMISS**


**WIGDOR LLP**

Michael J. Willemin
Monica Hincken

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
mwillemin@wigdorlaw.com
mhincken@wigdorlaw.com

*Counsel for Plaintiff*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..................... ii

FACTUAL BACKGROUND ..................... 1

ARGUMENT ..................... 8

I. DEFENDANTS' MOTION IS REALLY A MOTION FOR RECONSIDERATION AND IT SHOULD BE DENIED ..................... 8

A. Legal Standard ..................... 8

B. The Court Previously Held that Defendants Were Properly Served and Defendants Cannot Satisfy the Standard for Reconsideration ..................... 9

II. DEFENDANTS' MOTION SHOULD BE DENIED ON THE MERITS ..................... 10

A. Legal Standard ..................... 10

B. Service Was Accepted ..................... 12

C. Service Was Effectuated ..................... 16

III. AT A MINIMUM, THE COURT SHOULD HOLD AN EVIDENTIARY HEARING ... 16

CONCLUSION ..................... 17

# TABLE OF AUTHORITIES


Cases Page(s)

Atas v. New York Times Co.,
No. 22 Civ. 853 (JPO), 2023 WL 8355376 (S.D.N.Y. Dec. 1, 2023) ........................................ 8

Burton v. Wells Fargo Bank, N.A.,
No. 23 Civ. 5520 (DG) (JAM), 2024 WL 3173898 (E.D.N.Y. June 26, 2024) .........................11

Davidson v. Scully,
172 F. Supp. 2d 458 (S.D.N.Y. 2001) ........................................................................................ 9

Dorrough v. Harbor Sec., LLC.,
No. 99 Civ. 7589 (ILG), 2002 WL 1467745 (E.D.N.Y. May 10, 2002) .............................11, 16

Fezzani v. Bear, Stearns & Co. Inc.,
No. 99 Civ. 793 (PAC), 2023 WL 4625544 (S.D.N.Y. July 19, 2023) .................................... 16

Hoodho v. Holder,
558 F.3d 184 (2d Cir. 2009) ...................................................................................................... 10

Iron Gate Sec., Inc. v. Lowe's Companies, Inc.,
No. 15 Civ. 8814 (SAS), 2016 WL 1446230 (S.D.N.Y. Apr. 11, 2016) .................................. 10

Jackson v. Fed. Exp.,
766 F.3d 189 (2d Cir. 2014) .......................................................................................................11

Link v. Wabash R.R. Co.,
370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)...........................................................10, 11

Macon v. Corr. Med. Care, Inc.,
No. 12 Civ. 6150G, 2015 WL 4604018 (W.D.N.Y. July 30, 2015) .......................................... 15

Olympus Corp. v. Dealer Sales & Serv., Inc.,
107 F.R.D. 300 (E.D.N.Y. 1985)................................................................................................11

Santos v. State Farm Fire & Cas. Co.,
902 F.2d 1092 (2d Cir. 1990) .................................................................................................... 15

Saray Dokum v. Madeni Aksam Sanayi Turizm A.S.,
335 F.R.D. 50 (S.D.N.Y. 2020) ..................................................................................................11

U.S. Commodity Futures Trading Comm'n v. eFloorTrade, LLC,
No. 16 Civ. 7544 (PGG), 2020 WL 2216660 (S.D.N.Y. 2020) ................................................11

United States v. Malachowski,
623 Fed. Appx. 555 (2d Cir. 2015) ....................11

Vasquez v. City of New York - Off. of Mayor,
No. 22 Civ. 05068 (HG), 2024 WL 1886656 (E.D.N.Y. Apr. 30, 2024).................... 9

Williams-Steele v. TransUnion,
642 F. App'x 72 (2d Cir. 2016) .................... 16

Women's Integrated Network, Inc. v. U.S. Speciality Ins. Co.,
495 F. App'x 129 (2d Cir. 2012) .................... 8

Rules

Fed. R. Civ. P. 5(b)(2)(E) .................... 8

## FACTUAL BACKGROUND

On February 8, 2024, this action was filed against TTI and BDL. See Dkt. No. 1. Shortly thereafter, Mr. Smith agreed to accept service of the Complaint on behalf of TTI. September 27, 2024 Declaration of Michael J. Willemin ("Willemin Decl.") at ¶ 6. However, Mr. Smith refused to accept service of the Complaint on behalf of BDL. Id. at ¶ 7. In fact, Mr. Smith – who, unbeknownst to us, was actually representing BDL at the time – told us that BDL is merely a holding company and had no employees. Id. at ¶ 8-9; September 9, 2024 Declaration of Michael Cole ("Cole Decl.") at ¶ 2. He further urged us to dismiss BDL altogether. Willemin Decl. at ¶ 10. We are reasonably certain that Mr. Smith's representations about the nature of BDL were false, and the operative Complaint alleges as much based on substantial evidence. See Dkt. No. 65 at ¶¶ 30-34. As a result of Mr. Smith's refusal to accept service on behalf of his client, BDL, we were forced to serve that company directly and did so on April 4, 2024. Willemin Decl. at ¶ 11. Ultimately, BDL defaulted on April 26, 2024. Id. at ¶ 12.

Meanwhile, though Mr. Smith was willing to accept service on behalf of TTI, he urged us to dismiss TTI as well, claiming that it did not employ Plaintiff. Id. at ¶ 13. Again, we are reasonably certain that Mr. Smith's representations that TTI is not a joint or single employer of Plaintiff were false, and the operative Complaint alleges as much based on substantial evidence. See Dkt. No. 65 at ¶¶ 30-34. In addition, Mr. Smith was evasive when asked questions about who employed Mr. Lidong, flippantly writing in one email, "[y]ou asked me tell who [sic] employes [sic] Lidong, [sic] I told to [sic] do your homework and my job is not educate [sic] you." Willemin Decl., Ex. C.

On April 11, 2024, the parties agreed to extend TTI's deadline to answer the Complaint until after Plaintiff filed an amended complaint on May 6, 2024. See Dkt. No. 18. Between

April 11, 2024 and April 26, 2024, Plaintiff's counsel did substantial additional "homework" and determined, as suspected, that TTI and BDL were properly named in the Complaint. See Dkt. No. 65 at ¶¶ 2-11. Plaintiff's counsel further determined that BDL is not an employee-less holding company, that it was an employer of Ms. Puris, and that Douyin and Mr. Lidong were also proper Defendants. See Dkt. No. 65 at ¶¶ 2-3, 49-58.

In the weeks leading up to the filing of the Amended Complaint, the parties engaged in settlement discussions. Willemin Decl. at ¶ 14. In connection with those discussions, Plaintiff's counsel provided Mr. Smith with a draft of the Amended Complaint that indicated that it would be filed against all Defendants.[1] Id. at ¶ 15. At the time, it was counsel's understanding that Mr. Smith represented only TTI.[2] Id. at ¶ 16. As such, on April 26, 2024, Plaintiff's counsel wrote to Mr. Smith:

> "Finally, as you likely know, BDL is in default. As I am sure you would not let a client default, I assume that you do not represent that entity. However, I want to make sure that all of the relevant individuals employed by ByteDance are given an opportunity to participate in a potential resolution of this matter. As such, please confirm that BDL executives Lidong Zhang, Rubo Liang and Yiming Zhang are aware of these ongoing discussions. If I do not have that confirmation tonight (or hear from a lawyer representing them), I will communicate directly with them about this matter."

Id., Ex. A. Mr. Smith proceeded to forward this correspondence to Michael Cole. Cole Decl. at ¶ 5. Mr. Cole purports to be a lawyer for TTI, but his email domain is "@bytedance.com." Mr.

---

[1] Douyin Co., LTD was named in the amended complaint as Douyin Limited. Douyin's counsel has taken the position that the company's "name" is Douyin Co., LTD, rather than Douyin Limited, so Plaintiff has made that change in the caption. It is Plaintiff's understanding that the actual "name" of the company is "抖音有限公司," and that both Douyin Co., Limited and Douyin Limited are appropriate translations.

[2] We have since learned that he represented BDL as well. *Supra* at p. 1.

Cole, in turn, "advised Mr. Smith that he should tell opposing counsel that he was in the process of representing those individuals, and we agreed that he would object to such contact." Id.

Notably, Mr. Cole does not assert that he did not have the authority to make this representation on behalf of Mr. Lidong and the other BDL executives. Later that evening, Mr. Smith wrote to Plaintiff's counsel: "Please be advised that I am in the process of representing all of the defendants in this action[.] Therefore, please do not reach out to any corporate defendants, Lidong Zhang or any individuals employed by any corporate defendants without my express permission." Willemin Decl., Ex A. Based on this representation, Plaintiff's counsel did not engage directly with Mr. Lidong, Douyin, BDI or BDL prior to filing the Amended Complaint. Willemin Decl. at ¶ 18. This was detrimental to Plaintiff, who lost the opportunity to try to resolve this matter through direct communication with, *inter alia*, Mr. Lidong and Douyin. Id. at ¶ 19.

On Monday, April 29, 2024, Mr. Smith, Mr. Cole and undisclosed "others" participated in a videoconference. Cole Decl. at ¶ 6; Declaration of Ivan D. Smith ("Smith Decl.") at ¶ 5. Remarkably, Defendants have not submitted any declarations from the undisclosed "others" who were on this video call. Mr. Smith "left the videoconference with the impression that [he] was authorized to" "secur[e] for all defendants a 90-day extension of the time to respond to the amended complaint in exchange for accepting service on behalf of the soon-to-be named additional defendants." Smith Decl. at ¶ 5.

Then on April 30, 2024, when it became clear that resolution would not occur, Mr. Smith, ***totally unsolicited***, wrote to Plaintiff's counsel as follows: "We are willing to accept service for all defendants, if you agree that a response to your Amended Complaint is due 90 days from when you file the Amended Complaint." Id., Ex. A. Ultimately, the Amended Complaint was

filed on May 6, 2024. Dkt. No. 21. On the same day, Plaintiff's counsel wrote to Mr. Smith: "Hope all is well. The filed amended complaint is attached. Per your email below, we will consent to an extension of the deadline to respond to the amended complaint to August 4, 2024, in exchange for your acceptance of service on behalf of all defendants. Please confirm." Willemin Decl., Ex. A. Mr. Smith correctly noted that August 4, 2024 was a Sunday, and the parties ultimately agreed on August 5, 2024. Id.

The next day, Mr. Smith's office sent a proposed stipulation regarding the response deadline. This was done because "based on [his] earlier discussions with Mr. Cole [Mr. Smith] believed that [he] had authority to agree to this proposal." Smith Decl. at ¶ 8. The proposed stipulation was signed by Mr. Smith as "Counsel for Defendants." Id. at ¶ 18-19. The stipulation did not make reference to the acceptance of service, so Plaintiff's counsel sent the following email: "**Ivan, we don't need to put this in a stip, but just to formalize it, please confirm that you have accepted service of the amended complaint on behalf of all defendants, and that defendants are waiving any arguments as to insufficient or improper service?"** Id., Ex. B (emphasis added). Mr. Smith responded: "**Yes.** As long as you are waiving any issue concerning defaulting by BDL." Id. (emphasis added). Plaintiff's counsel responded: "Agreed." Id. Thus, Plaintiff's counsel not only agreed to extend Defendants' time to respond to the Amended Complaint, but also waived arguments concerning BDL's three-plus month default.

To be very clear, the only reason Plaintiff agreed to forgive BDL's default and provide 90 days for Defendants to respond was because Mr. Smith accepted service on behalf of Douyin and Mr. Lidong. Willemin Decl. at ¶ 22. TTI and BDL were already served, and thus their responses to the Amended Complaint were already due on May 20, 2024. Id. at ¶ 23. BDI would have been served through the Secretary of State, and its response would have been due on June 5,

2024. Id. at ¶ 23. However, Plaintiff's counsel knew that serving Douyin and Mr. Lidong would be very difficult because serving them would require the cooperation of the Chinese government pursuant to the Hague Convention. Id. at ¶ 24. Plaintiff's counsel had been advised by its process server that it would take over a year to serve Douyin and Mr. Lidong, so Plaintiff's counsel agreed to extend every Defendant's time specifically because Mr. Smith accepted service on behalf of Douyin and Mr. Lidong. Id. at ¶ 22.

In furtherance of the parties' agreement, on May 8, 2024, Mr. Smith filed a notice of appearance on behalf of all parties, including Douyin and Mr. Lidong. Dkt. No. 29. He then filed the aforementioned stipulation, which, by its very nature, constitutes an admission that Douyin and Mr. Lidong were served (otherwise there would be no need to set a response date). Dkt. No. 32. On the same day, Mr. Smith's colleague sent proposed representation letters to Mr. Cole and his colleague, Melynnie Rizvi, to be shared with Douyin and Mr. Lidong. Smith Decl. at ¶ 9. On the same day, Ms. Rizvi, a lawyer with TikTok, wrote an email to Mr. Smith that is mostly redacted. See Dkt. No. 72-4 at p. 4. In part, the email seems to be informing Mr. Smith for the first time that an undefined "we" were "currently in the process of talking with several firms" and "would like Seyfarth to hold on accepting service for the other [undefined] defendants." Id. The "we" language is critical, as it constitutes irrefutable evidence that Ms. Rizvi was at the time acting as an agent for Douyin and Mr. Lidong. Indeed, she and Mr. Cole were in the process of interviewing firms to represent Douyin and Mr. Lidong.

However, by that point, it was already too late. As Mr. Smith explained, "Based upon my discussions with [Plaintiff's counsel], we have already agreed to accept service for all defendants in return for response date[ ] of August 5, 2024. Obviously, you can substitute other firms to represent **Douyin and BDL** as you wish, but wanted you to know that we did accept service."

See Dkt. 72-4 at p. 3 (emphasis added). While Defendants' redactions obfuscate important parts of Ms. Rizvi's initial email, Mr. Smith's response suggests that only Douyin and BDL – and not Mr. Lidong – were at the time attempting to belatedly resist service. In response to Mr. Smith's email, Mr. Cole apologized if "wires got crossed," but acknowledged that service had been effectuated and that a responsive pleading was due: "**But all good** and since **we** now have a period of time before we need to appear, I don't think we'll need to 'substitute' but can just have co-counsel once selected make their appearance with the first responsive pleading?" Id. at pp. 2-3 (emphasis added). Mr. Cole's May 8, 2024 email also refers to a "prior email" that inexplicably has not been provided to the Court.

Based on the foregoing series of events, it is clear that whatever entity they purport to work for, from April 26, 2024, through May 8, 2024, Mr. Cole and Ms. Rizvi were acting on behalf of Douyin and Mr. Lidong in connection with the instructions to Mr. Smith. Based on those instructions, Mr. Smith accepted service of the Amended Complaint on behalf of all Defendants and, *after learning that service was accepted*, Mr. Cole's response was "all good," which plainly ratified the authority to accept service. Then, two days later, Ms. Rizvi apparently had a call with Mr. Smith, after which she emailed him, claiming that "the [undisclosed] company does not have authority to accept service on behalf of Douyin or Lidong, and **we are in the process of obtaining separate counsel to represent them.** We understand that Service has already been accepted for them . . ." See Dkt. No. 72-4 at p. 2 (emphasis added). Ms. Rizvi's email explicitly acknowledges that service was already accepted and, more importantly, reconfirms that Mr. Cole and Ms. Rizvi were at all relevant times acting as agents for Douyin and Mr. Lidong.

Remarkably, despite her critical role in all of this, Ms. Rizvi did not submit a declaration in connection with Defendants' motion. Plaintiff suspects that the reason for this is because she could not, under oath, swear that Mr. Smith was not authorized to accept service when he did. In fact, even her May 10, 2024, email does not say that Mr. Smith was not authorized to accept service, but rather is written in the present tense.

This tense-play is consistent with the declaration that Mr. Smith previously submitted in connection with his motion to withdraw as counsel – a declaration that made no sense whatsoever. See Dkt. No. 35. Among other things, that initial declaration *did not* state that Seyfarth did not represent Douyin and Mr. Lidong when Mr. Smith accepted service, but only that Seyfarth did not represent Douyin and Mr. Lidong as of the time he filed his notice of appearance. See Dkt. No. 35 at ¶ 6. Mr. Smith's declaration *did not* state whether he ever represented Douyin and Mr. Lidong, and, if so, during what time period. Id. Although that initial declaration suggests that Seyfarth was never retained, it does not actually say that. See, e.g., id. at ¶ 7 ("I did not have authority to waive the service of summons for defendants Zhang and Douyin as the firm **does not** represent them") (emphasis added). Mr. Smith's initial declaration also failed to account for why, if Seyfarth did not represent Douyin and Mr. Lidong, Mr. Smith represented the opposite to our firm and the Court on multiple occasions. Id. Nor did the initial declaration explain who told Mr. Smith that he represented Douyin and Mr. Lidong or otherwise explain why Mr. Smith believed that he represented them. Id. Indeed, even the present declaration fails to answer many of these questions.

Finally, Mr. Smith's current declaration concludes with this blatantly false statement: "At no point did I ever receive service of a summons and amended complaint directed to Douyin Limited, Douyin Co., or Zhang." Smith Decl. at ¶ 12. Mr. Smith was served with the Amended

Complaint *via* ECF (Dkt. No. 21), as he was on the distribution list for that ECF bounce. He also was served with the relevant summonses *via* ECF when he received the bounces for Dkt. Nos. 25 and 27. See Fed. R. Civ. P. 5(b)(2)(E).

Ultimately, the Court rejected the contention that Douyin and Mr. Lidong had not been served, and set an August 5, 2024 deadline for their responsive pleadings. Your Honor acknowledged the Court's prior decision during the parties' September 6, 2024 conference. In response to Douyin's and Mr. Lidong's counsel's suggesting that his client had not properly been served, Your Honor stated, "I've already ruled effectively once on the service issue." See September 6, 2024 Conference Transcript at p. 6, Ex. D. Now, in the guise of a new motion, Douyin and Mr. Lidong ask the Court to reconsider its prior position.

## ARGUMENT

### I. DEFENDANTS' MOTION IS REALLY A MOTION FOR RECONSIDERATION AND IT SHOULD BE DENIED

#### A. Legal Standard

"A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." Atas v. New York Times Co., No. 22 Civ. 853 (JPO), 2023 WL 8355376, at *1 (S.D.N.Y. Dec. 1, 2023) (citation and quotation omitted). "To prevail, the movant must demonstrate either (i) an intervening change in controlling law; (ii) the availability of new evidence; or (iii) the need to correct clear error or prevent manifest injustice." Id. (citation and quotation omitted). "Without presenting any new facts or intervening law, [a party's] motion amounts to 'simply attempting to re-litigate an issue already decided.'" Id. (quoting Women's Integrated Network, Inc. v. U.S. Speciality Ins. Co., 495 F. App'x 129, 131 (2d Cir. 2012). "[A] motion for reconsideration is not a vehicle for presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a

second bite at the apple." Vasquez v. City of New York - Off. of Mayor, No. 22 Civ. 5068 (HG), 2024 WL 1886656, at *1 (E.D.N.Y. Apr. 30, 2024) citing Davidson v. Scully, 172 F. Supp. 2d 458, 464 (S.D.N.Y. 2001).

**B. The Court Previously Held that Defendants Were Properly Served and Defendants Cannot Satisfy the Standard for Reconsideration**

In this Court's May 15, 2024 Order (Dkt. No. 38), the Court stated the following:

> Seyfarth [Shaw LLP] advised the plaintiff that it was willing to accept service for all defendants. On May 8, Seyfarth accepted service on behalf of all defendants, and the parties stipulated to a deadline of August 5, 2024 for responses to the amended complaint. On the same day, attorneys from Seyfarth filed notices of appearance on the docket on behalf of all defendants.

The Court then ordered Seyfarth to (1) serve the Court Order on Defendants Douyin and Zhang and file an affidavit of service; (2) provide Plaintiff's counsel with all contact information for Douyin and Zhang; (3) and answer or otherwise move in response to the Amended Complaint. Id. The Order further clarified that if no response to the Amended Complaint was filed, a default would be entered against the non-answering defendant. Id.

Despite having received the Court's May 15, 2024 Order, Defendants waited *two and a half months* before filing their initial motion to dismiss on July 31, 2024 (see Dkt. No. 54), in which Defendants argued that service was improper. That motion was mooted by the filing of the Second Amended Complaint, after which, on September 6, 2024, the Court held an Initial Conference. During the Initial Conference, the Court made clear the import of Your Honor's May 15, 2024 Order: "I've already ruled effectively once on the service issue. So you're getting a second bite at the apple on that, and that's fine. You're new counsel. But there was a representation by your clients through counsel that service would be accepted. And our schedule

over the summer was made in reliance on that both plaintiff's counsel and this Court relied." Conference Transcript at p. 6.

While the Court acknowledged Defendants' right to take a "second bite at the apple," that "second bite" should be treated as a motion for reconsideration. And, given the applicable standard, the motion should be denied. Indeed, Defendants do not argue that the Court overlooked any facts or law previously presented, and the declarations submitted in connection with the motion do not contain facts that were not known or knowable at the time Mr. Smith initially informed the Court that he was supposedly not authorized to accept service. Moreover, no manifest injustice will occur in the event that the Court's prior order is not reconsidered. ***If the Court reconsiders its position, Plaintiff will serve Douyin and Mr. Lidong through the Hague Convention and the parties will be in the exact same position that they are in now*** – only it will take a year or more from now to get back here. It can hardly be said that Defendants will suffer manifest injustice by having to commence litigation now rather than later.

In sum, Defendants filed the instant motion simply because they disagree with the Court's prior decision on service, which is something that "[c]ourts have repeatedly been forced to warn counsel" not to do. Iron Gate Sec., Inc. v. Lowe's Companies, Inc., No. 15 Civ. 8814 (SAS), 2016 WL 1446230, at *1 (S.D.N.Y. Apr. 11, 2016). As such, it should be denied.

## II. DEFENDANTS' MOTION SHOULD BE DENIED ON THE MERTIS

### A. Legal Standard

Parties are responsible for the actions of their attorneys. "[A] party who "voluntarily chose [an] attorney as his representative in [an] action ... cannot ... avoid the consequences of the acts or omissions of this freely selected agent." Hoodho v. Holder, 558 F.3d 184, 192 (2d Cir. 2009) quoting Link v. Wabash R.R. Co., 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734

(1962). "Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." Id. at 634, 82 S.Ct. 1386 (internal quotations omitted). See also Jackson v. Fed. Exp., 766 F.3d 189, 198 (2d Cir. 2014) ("Even if a client does have a disagreement with her attorney on a matter…all litigants are bound by the concessions of freely retained counsel."); United States v. Malachowski, 623 Fed. Appx. 555, 557 (2d Cir. 2015) (summary order) (late filing not excused by mistakes that counsel made); U.S. Commodity Futures Trading Comm'n v. eFloorTrade, LLC, No. 16 Civ. 7544 (PGG), 2020 WL 2216660, at *4 n.5 (S.D.N.Y. 2020) (rejecting argument that stipulation entered into as a result of poor legal advice should be set aside); Saray Dokum v. Madeni Aksam Sanayi Turizm A.S., 335 F.R.D. 50, 53 (S.D.N.Y. 2020) (holding that Plaintiff's claims of "miscues that occurred" with former counsel are of no consequence because "the conduct of an attorney is imputed to his client… .").

As far as accepting service, if there is evidence sufficient to support even a "finding of **implied** authorization," service upon an attorney can be sufficient to confer personal jurisdiction. See Burton v. Wells Fargo Bank, N.A., No. 23 Civ. 5520 (DG) (JAM), 2024 WL 3173898, at *17 (E.D.N.Y. June 26, 2024) (emphasis added). Ultimately, "[t]he question, then, is whether [Defendant] either—explicitly or implicitly—indicated that [Mr. Smith] was authorized to accept service on [its] behalf." See Dorrough v. Harbor Sec., LLC., No. 99 Civ. 7589 (ILG), 2002 WL 1467745, at *4 (E.D.N.Y. May 10, 2002) citing Olympus Corp. v. Dealer Sales & Serv., Inc., 107 F.R.D. 300, 305 (E.D.N.Y. 1985).

### B. Service Was Accepted

As this Court previously found, Mr. Smith (1) told Plaintiff's counsel that it represented all Defendants in this action, (2) instructed Plaintiff's counsel not to contact any of the Defendants, (3) filed notices of appearance on behalf of all defendants and (4) filed a stipulation extending all Defendants' deadline to respond to the Amended Complaint. See Dkt. No. 38 at pgs. 2-3. This plainly indicates explicit authority to not only accept service on behalf of Defendants, but it also indicates a level of communication that is incompatible with Defendants' current claim that there was simply a "misunderstanding."

As noted above, Mr. Smith need not have been given direct or explicit authorization from a Douyin corporate representative or Mr. Lidong to accept service on Defendants' behalf. While Defendants' organizational structure is intentionally opaque, what is clear is that Mr. Cole and his colleagues were communicating with Mr. Smith on behalf of all Defendants, including Douyin and Mr. Lidong. Whether Mr. Cole was communicating directly with Douyin and Mr. Lidong is of no moment, as a careful review of even the cherrypicked communications provided by Defendants establishes that he and his colleagues were authorized to act on behalf of Douyin and Mr. Lidong, either because they were given express permission by representatives of Douyin and Mr. Lidong or because they are authorized to act on their behalf as a function of their role at TikTok and/or Bytedance. As such, they were acting as agents for Douyin and Mr. Lidong while communicating with Mr. Smith, who, in turn, had the authority to act consistent with his conversations with Mr. Cole and his colleagues.

First, as early as April 26, 2024, nearly two weeks prior to the filing of the Amended Complaint, Mr. Cole advised Mr. Smith to inform Plaintiff's counsel that he was in the process of representing Mr. Lidong. It is not credible to claim that Mr. Cole would have said this unless

he had the authority to do so, either from Mr. Lidong himself or someone representing Mr. Lidong.

Second, on April 29, 2024, a week prior to the filing of the Amended Complaint, Mr. Cole (and his colleagues) had a teleconference with Mr. Smith during which they discussed accepting service on behalf of all Defendants. Smith Decl. at ¶5. While Mr. Cole claims that he had not previously discussed this with Mr. Lidong or Douyin, it is not credible that he was having these conversations without any authority to do so. As such, it is highly likely that he was, at a minimum, acting with the authority given to him to be a representative of Mr. Lidong and Douyin. Moreover, Mr. Cole's supervisor, Ms. Rizvi did not submit a declaration concerning any communications she might have had with Mr. Lidong or Douyin – or representatives of Mr. Lidong or Douyin. Ultimately, Mr. Smith left the April 29, 2024 conversation with the impression that he had the authority to agree to accept service. Id. It is not credible that a lawyer with decades of experience would believe that he had the authority to accept service if he did not. This is particularly true given how consequential this decision would be for two foreign defendants who otherwise would be difficult to serve. Again, while Mr. Cole submitted a declaration, Ms. Rizvi did not.

Third, Mr. Cole admits that he was either in, or about to be in, communication with a member of Douyin's legal team as of the April 29, 2024 teleconference. Cole Decl. at ¶6.

Fourth, notably absent from any declaration is a statement as to whether or not Mr. Smith's April 30, 2024 email proposing to accept service was ever sent to Defendants' in-house lawyers. Obviously, if it was, and none of them objected at the time, this would support Mr. Smith's claim that he was authorized to accept service.

Fifth, in any event, Mr. Smith informed Mr. Cole and Ms. Rizvi that an agreement on service had been reached on May 6, 2024. Smith Decl., Ex. 5. It was not until two full days later that Ms. Rizvi sent a (heavily redacted) email to Mr. Smith claiming that "We are currently in the process of talking with several firms but wanted to share this information, as we would like Seyfarth to hold on accepting service for the other defendants." Smith Decl., Ex. 7. The language in this email is critical. Ms. Rizvi, who copied Mr. Cole, states that "**We**," *i.e.*, her and Mr. Cole, were talking with several firms to represent Douyin and Mr. Lidong. This is a "smoking gun" that establishes that Ms. Rizvi and Mr. Cole were acting on behalf of Douyin and Mr. Lidong at the time service was accepted based on their conversations with Mr. Smith. Whether Ms. Rizvi and Mr. Cole had spoken directly with Douyin or Mr. Lidong to this point is irrelevant, as clearly Defendants' corporate structure vests them with the authority to act on their behalf, which is what they were doing in communicating with Mr. Smith. Moreover, if Mr. Smith was not authorized to accept service, either Mr. Cole or Ms. Rizvi (or one of Mr. Smith's colleagues) would have immediately informed him that he had made a grave mistake. They would not have waited two full days.

Sixth, despite claiming that he got his "wires crossed," Mr. Cole's May 8, 2024 response to Mr. Smith is another "smoking gun." Initially, he states that he "read the **prior email** as asking for our approval that you can go ahead and accept service as to the other new entities and Lidong in exchange for 8/5 as the responsive pleading date." Smith Decl., Ex. 7 (emphasis added). However, the "prior email," which is likely fatal to Defendants' motion, was not provided to the Court in connection with Defendants' submission. Mr. Cole's email goes on to say, "**But all good,** and since we now have a period of time before we need to appear, I don't

think we'll need to "substitute" but can just have co-counsel once selected **make their appearance with the first responsive pleading?**" Id. (emphasis added).

Finally, it was not until two days later that Ms. Rizvi sent her tense-relevant email advising Mr. Smith that the (undisclosed) company "**does not**" (not *did* not), have authority to accept service on behalf of Douyin or Mr. Lidong. Id. (emphasis added). Again, however, Ms. Rizvi's email makes clear that she and Mr. Cole are authorized to act on behalf of Douyin or Mr. Lidong, as she says, "**we** are in the process of retaining separate counsel to represent [Douyin and Mr. Lidong]." Id. (emphasis added).

In sum, it is clear that whether or not they were speaking directly with Mr. Lidong or Douyin at the time, Ms. Rizvi and Mr. Cole were acting as their representatives in connection with their discussions with Mr. Smith. During those discussions, they authorized Mr. Smith to accept service of the Amended Complaint. To the extent authorization was not given, and Mr. Smith was inexplicably confused, Ms. Rizvi and Mr. Cole ratified that decision through their later communications, particularly Mr. Cole's statement that the acceptance of service was "all good." Plaintiff suspects that at some point between May 8 and May 10, 2024, while Defendants were communicating with other law firms, that one or more of those law firms called into question the strategy of accepting service. However, neither regret nor a mistake on the part of counsel justify Defendants' motion, and it should be denied.

The cases cited by Defendants are all easily distinguishable. In Macon v. Corr. Med. Care, Inc., No. 12 Civ. 6150G, 2015 WL 4604018, at *3 (W.D.N.Y. July 30, 2015), there was nothing in the record to suggest that the accepting lawyer ever made a representation that he was authorized to accept. The same was true in Santos v. State Farm Fire & Cas. Co., 902 F.2d 1092, 1094 (2d Cir. 1990) ("The district court noted that there was no dispute that the attorneys were

not so authorized, and that observation has not been challenged."), Dorrough v. Harbor Sec., LLC., No. 99 Civ. 7589 (ILG), 2002 WL 1467745, at *4 (E.D.N.Y. May 10, 2002) ("Certainly, there is no evidence indicating that Sulmasy explicitly authorized McCabe & Flynn to accept service for him. Nor are there any implicit indicia suggesting that Sulmasy had so authorized the law firm."), and Williams-Steele v. TransUnion, 642 F. App'x 72, 73 (2d Cir. 2016) ("Williams–Steele has shown no basis for doubting th[e] representation" that the law firm was not authorized to accept service). In Fezzani v. Bear, Stearns & Co. Inc., No. 99 Civ. 793 (PAC), 2023 WL 4625544, at *2 (S.D.N.Y. July 19, 2023), it appears that the Plaintiff's counsel made a representation that was not backed by supporting documentation or any other evidence that the defense attorney was authorized to accept service. In contrast, the Court is in possession of Mr. Smith's written agreement *and* filed stipulation related to the acceptance of service, and the evidence that he was authorized to accept service by lawyers acting on Defendants' behalf is substantial.

### C. Service Was Effectuated

The contention that Mr. Smith was never served with the summonses and Amended Complaint is a disingenuous one. Mr. Smith was served with the Amended Complaint *via* ECF (Dkt. No. 21), as he was on the distribution list for that ECF bounce. He also was served with the relevant summonses *via* ECF when he received the bounces for Dkt. Nos. 25 and 27. See Fed. R. Civ. P. 5(b)(2)(E). As such, there is no basis to claim that Mr. Smith was never provided with process.

## III. AT A MINIMUM, THE COURT SHOULD HOLD AN EVIDENTIARY HEARING

If the Court is inclined to grant Defendants' motion, we respectfully submit that it should do so only after holding an evidentiary hearing. Such hearing should require the testimony of all

parties and party-representatives, including the lawyers at Seyfarth Shaw LLP, Mr. Cole, Ms. Rizvi and each and every person with whom they were discussing this matter from April 16, 2024 through the end of May 2024. In addition, Defendants should be required to turn over every single record related to this matter, irrespective of any claim of privilege, from the period of April 16, 2024 through the end of May 2024, including records and notes from any meetings or telephone calls. Such documents are necessary not only to establish whether the acceptance of service was explicitly authorized, but also whether Mr. Cole and Ms. Rizvi were acting on behalf of Douyin or Lidong, or additional representatives of Douyin or Lidong. All communications with the third-party law firms (including Paul Hastings) LLP that were being interviewed by Defendants should also be produced, as such communications are almost certain to prove Plaintiff's theory that Defendants' current position is borne out of regret or mistake, neither of which justifies dismissal.

**CONCLUSION**

For the foregoing reasons, Douyin's and Mr. Lidong's motion should be denied.

Dated: September 27, 2024
New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: ______________________
Michael J. Willemin
Monica Hincken

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
mwillemin@wigdorlaw.com
mhincken@wigdorlaw.com

*Counsel for Plaintiff*