UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

KATIE ELLEN PURIS,                                :
                                                  :
                        Plaintiff,                :        No. 1:24-cv-00944
                                                  :
         - against -                              :
                                                  :
TIKTOK INC., BYTEDANCE LTD.,                       :
BYTEDANCE INC., DOUYIN LIMITED, and                :
LIDONG ZHANG,                                      :
                                                  :
                        Defendants.                :
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**DEFENDANTS TIKTOK INC., BYTEDANCE LTD., AND BYTEDANCE INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS**


*Of Counsel:*
Ivan D. Smith
Maureen M. Stampp
Amanda Williams


SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

*Attorneys for Tiktok Inc., Bytedance Ltd., and Bytedance Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

I.    PRELIMINARY STATEMENT ....................................................................................1

II.   FACTUAL BACKGROUND...................................................................................2

    A.    Plaintiff's Initial Employment with BDI. ..........................................................2

        1.    Plaintiff Begins to Perform Poorly for BDI While Supporting
            GBM. ......................................................................................3

    B.    Plaintiff Transitions to the Brand and Creative Organization and
        Continues to Perform Below Expectations. ..........................................................6

    C.    The Cannes Incident ....................................................................................8

    D.    Plaintiff's Employment is Terminated....................................................................8

III.  RELEVANT PROCEDURAL HISTORY ..........................................................8

IV.   ARGUMENT .....................................................................................9

    A.    Legal Standards........................................................................................9

    B.    Plaintiff's Claims Based on Time-Barred Conduct Must Be Dismissed.................9

        1.    Plaintiff's Title VII and ADEA Claims Based on Time-Barred
            Conduct Must Be Dismissed...........................................................10

    C.    Plaintiff's Gender Discrimination Claims Fail. ..........................................12

        1.    Plaintiff's Gender Discrimination Claim Pursuant to Title VII Must
            be Dismissed. .......................................................................13

        2.    Plaintiff's Gender Discrimination Claims pursuant to the NYSHRL
            and the NYCHRL Must Be Dismissed. ......................................18

    D.    Plaintiff's Hostile Work Environment Claims Must Be Dismissed. ...................21

        1.    Plaintiff's Hostile Work Environment Claim pursuant to Title VII
            Must Fail. ...........................................................................21

        2.    Plaintiff's Hostile Work Environment Claims Pursuant to the
            NYSHRL and NYCHRL Must Fail..........................................................22

    E.    Plaintiff's Title VII Age Discrimination Claim Fails. ..........................................23

F.      Plaintiff's Disability Discrimination Claims Under NYCHRL and
        NYSHRL Must Be Dismissed. ............................................................ 23

G.      Plaintiff's Retaliation Claims Fail. ................................................... 26

        1.      Plaintiff's Title VII Retaliation Claims Fail ..............................26

        2.      Plaintiff's NYCHRL & NYSHRL Retaliation Claims Fail. ....................28

H.      Plaintiff's FMLA Interference Claims Fail............................................. 30

I.      Plaintiff's NYCHRL Interference Claim Fails. .................................... 33

J.      The Court Should Decline to Exercise Supplemental Jurisdiction. ...................... 34

V.      CONCLUSION....................................................................................35

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amley v. Sumitomo Mitsui Banking Corp.*,
   No. 19-cv-3777, 2021 WL 4429784 (S.D.N.Y. Sept. 27, 2021) ............................................31

*Anderson v. City of New York*,
   712 F. Supp. 3d 412 (S.D.N.Y. Jan 17, 2024) .........................................................................26

*Anderson v. Nat'l Grid, PLC*,
   93 F. Supp. 3d 120 (E.D.N.Y. 2015) .......................................................................................34

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).....................................................................................................................9

*Banks v. GM, LLC*,
   81 F.4th 242 (2d Cir. 2023) ......................................................................................................28

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).....................................................................................................................9

*Brand v. New Rochelle City Sch. Dist.*,
   No. 19-cv-7263, 2022 WL 671077 (S.D.N.Y. May 7, 2022) ..................................................27

*Brightman v. Physician Affiliate Grp. of N.Y., P.C.*,
   No. 20-cv-4290, 2021 WL 1999466 (S.D.N.Y. May 19, 2021) ..............................................29

*Brown v. Pension Bds.*,
   488 F. Supp. 2d 395 (S.D.N.Y. 2007).......................................................................................32

*Burgess v. New Sch. Univ.*,
   No. 23-cv-4944, 2024 WL 4149240 (S.D.N.Y. Sept. 11, 2024) .............................................12

*Cadet v. All. Nursing Staffing of N.Y., Inc.*,
   632 F. Supp. 3d 202 (S.D.N.Y. 2022)..................................................................................33, 34

*Chinnery v. N.Y. State Office of Children & Family Servs.*,
   10-cv-882, 2012 WL 5431004 (S.D.N.Y. Nov. 5, 2012) ........................................................13

*Citizens United v. Schneiderman*,
   882 F.3d 374 (2d Cir. 2018).......................................................................................................18

*Cornetta v. Town of Highlands*,
   434 F. Supp. 3d 171 (S.D.N.Y. 2020).......................................................................................25

*Crawford v. Bronx Cmty. Coll.*,
No. 22-cv-1062, 2024 WL 3898361 (S.D.N.Y. Aug. 21, 2024)...........................................24

*Daeisadeghi v. Equinox Great Neck, Inc.*,
794 Fed. App'x. 61 (2d Cir. 2019)..........................................................................................21

*De Figueroa v. N.Y.*,
403 F. Supp. 3d 133 (E.D.N.Y. 2019) ....................................................................................31

*Durden v. Metro Transit. Auth.*,
No. 17-cv-5558, 2018 WL 3360757 (S.D.N.Y. July 10, 2018)..........................................17

*Ekpe v. City of N.Y.*,
No. 20-cv-9143, 2024 WL 1621207 (S.D.N.Y. Apr. 12, 2024) .........................................22

*Fahs Constr. Grp., Inc. v. Gray*,
725 F.3d 289 (2d Cir. 2013)..................................................................................................11

*Freud v. N.Y.C. Dep't of Educ.*,
No. 22-879, 2023 WL 3103588 (2d Cir. Apr. 27, 2023) ...................................................26

*Garcia v. Marc Tetro, Inc.*,
No. 18-cv-10391, 2020 WL 996481 (S.D.N.Y. Mar. 2, 2020)...........................................35

*Grant v. N.Y. Times Co.*,
No. 16-cv-03175, 2017 WL 4119279 (S.D.N.Y. Sept. 14, 2017) .....................................16

*Graziadio v. Culinary Inst. Of Am.*,
817 F.3d 415 (2d Cir. 2016)..................................................................................................30

*Hahn v. Bank of Am. Inc.*,
No. 12-cv-4151, 2014 WL 1285421 (S.D.N.Y. 2014) .......................................................27

*Henry v. Rising Ground*,
No. 153458/2021, 2022 WL 2158368 (N.Y. Sup. Ct. Jun. 10, 2022) ...........................20, 23

*Johnson v. Andy Frain Services, Inc.*,
No. 12-cv-4454, 2014 WL 2805113 (E.D.N.Y. June 20, 2014) ........................................19

*Kaye v. N.Y.C. Health & Hosps. Corp.*,
No. 18-cv-12137, 2023 WL 2745556 (S.D.N.Y. Mar. 31, 2023).......................................28

*Kemp v. Regeneron Pharms., Inc.*,
No. 23-cv-174, 2024 WL 4111789 (2d Cir. Sept. 9, 2024) ..............................................33

*King v. Aramark Servs. Inc.*,
96 F.4th 546 (2d Cir. 2024) ..............................................................................................20, 23

*La Grande v. DeCrescente Distrib. Co., Inc.*,
 370 F. App'x 206 (2d Cir. 2010) ...........................................................13

*Langella v. Mahopac Cent. Sch. Dist.*,
 No. 18-cv-10023, 2020 WL 2836760 (S.D.N.Y. May 31, 2020) .............................10

*LaSalle v. City of N.Y.*,
 No. 13-cv-5109, 2015 WL 1442376 (S.D.N.Y. Mar. 30, 2015)...............................17

*Leizerovici v. HASC Ctr. Inc.*,
 No. 17-cv-3605, 2018 WL 1114703 (E.D.N.Y. Feb. 27, 2018) ........................18, 26

*Leroy v. Delta Air Lines*,
 No. 21-267-cv, 2022 WL 12144507 (2d Cir. Oct. 27, 2022) (Summary Order).........20, 23, 28

*Lievre v. JRM Constr. Mgmt., LLC*,
 No. 17-cv-4439, 2019 WL 4572777 (S.D.N.Y. Sept. 20, 2019) ...........................31

*Littlejohn v. City of New York*,
 795 F.3d 297 (2d Cir. 2015)...............................................................21

*Loth v. City of N.Y.*,
 No. 20-cv-9345, 2021 WL 4311569 (S.D.N.Y. Sept. 21, 2021) ...........................12

*Luzunaris v. Baly Cleaning Servs.*,
 No. 23-cv-11137, 2024 WL 3926708 (S.D.N.Y. July 29, 2024)...........................24

*Macias v. Barrier Free Living, Inc.*,
 No. 16-cv-1735, 2018 WL 1603566 (S.D.N.Y. Mar. 27, 2018)...........................34

*Marcus v. Leviton Mfg. Co.*,
 No. 15-cv-656, 2016 WL 74415 (E.D.N.Y. Jan. 6, 2016) ......................................17

*May Flower Int'l, Inc. v. Tristar Food Wholesale Co. Inc.*,
 No. 21-cv-02891, 2022 WL 4539577 (E.D.N.Y. Sept. 28, 2022) ...........................18

*McCullough v. Xerox Corp.*,
 942 F. Supp. 2d 380 (W.D.N.Y. 2013) ...................................................29

*Meckler v. Cornell Univ.*,
 No. 23-cv-773, 2024 WL 3535488 (N.D.N.Y. July 25, 2024) ..............................21

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
 715 F.3d 102 (2d Cir. 2013)..........................................................18, 20

*Milne v. Navigant Consulting*,
 No. 09-cv-8964, 2010 U.S. Dist. LEXIS 115650 (Oct. 27, 2010)...........................32

*Missick v. City of New York*,
   707 F. Supp. 2d 336 (E.D.N.Y. March 22, 2010) ...................................................15

*Mitchell v. Planned Parenthood of Greater N.Y., Inc.*,
   No. 1:23-cv-01932, 2024 WL 3849192 (S.D.N.Y. Aug. 16, 2024) .......................................19

*Mooney v. City of N.Y.*,
   No. 18-cv-328, 2018 WL 4356733 (S.D.N.Y. Sept. 12, 2018) ................................................14

*Morales v. New York*,
   No. 05-cv-5006, 2010 WL 11623479 (E.D.N.Y. Aug. 30, 2010) ..........................................17

*Mwantuali v. Hamilton Coll.*,
   No. 6:22-cv-1395, 2024 WL 1219752 (N.D.N.Y. Mar. 20, 2024) ..........................................28

*Nally v. New York State*,
   No. 10-cv-1186, 2013 WL 2384252 (N.D.N.Y. May 30, 2013) ...........................................32

*Napolitano v. Teachers Coll.*,
   19-cv-09515, 2021 WL 4443143 (S.D.N.Y. Sept. 28, 2021) ...................................................23

*Nat'l R.R. Pass. Corp. v. Morgan*,
   536 U.S. 101 (2002) ............................................................................................................10

*Ndongo v. Bank of China Ltd.*,
   No. 22-cv-05896, 2023 WL 2215261 (S.D.N.Y. Feb. 24, 2023) ..........................................29

*Ndremizara v. Swiss Re Am. Holding Corp.*,
   93 F. Supp. 3d 301 (S.D.N.Y. 2015) ...................................................................................17

*Nguedi v. Fed. Reserve Bank of N.Y.*,
   813 F. App'x 616 (2d Cir. 2020) .........................................................................................22

*Orisek v. Am. Inst, of Aeronautics and Astronautics*,
   938 F. Supp. 185 (S.D.N.Y. 1996) ......................................................................................15

*Palmer v. eCapital Corp.*,
   No. 24-cv-15, 2024 WL 3794715 (S.D.N.Y. Aug. 13, 2024) ..............................................34

*Parlato v. Town of E. Haven*,
   No. 22-cv-1094, 2023 WL 5206873 (D. Conn. Aug. 14, 2023) ...........................................29

*Pergament v. Fed. Express Corp.*,
   No. 2:03-cv-1106, 2007 WL 1016993 (E.D.N.Y. Mar. 30, 2007) ........................................15

*Pitter v. Target Corp.*,
   No. 1:20-cv-00183, 2020 WL 8474858 (N.D.N.Y. Sept. 1, 2020)........................................22

*Quinn v. Green Tree Credit Corp.*,
 159 F.3d 759 (2d Cir. 1998), *abrogated in part on other grounds by Nat'l R.R.
 Passenger Corp. v. Morgan,* 536 U.S. 101 (2002) ................................................21

*Raimondo v. Erie 2-Chautauqua-Cattaraugus BOCES*,
 No. 22-cv-721s, 2023 WL 4624749 (W.D.N.Y. July 19, 2023)............................26

*Rivas v. N.Y. State Lottery*,
 745 F. App'x 192 (2d Cir. 2018) ..........................................................................11

*Rivera v. Crowell & Moring L.L.P.*,
 No. 14-cv-2774, 2016 WL 796843 (S.D.N.Y. Feb. 18, 2016) ...............................31

*Rosas v. Balter Sales Co.*,
 No. 12-cv-6557, 2015 WL 12915807 (S.D.N.Y. Mar. 30, 2015)...........................34

*Rossbach v. Montefiore Med. Ctr.*,
 No. 19-cv-5758, 2021 WL 930710 (S.D.N.Y. Mar. 11, 2021)..........................33, 34

*Sank v. City Univ. of New York*,
 10-cv-4975, 2011 WL 5120668 (S.D.N.Y. Oct. 28, 2011)....................................16

*Scalercio-Isenberg v. Morgan Stanley Servs. Grp.*,
 No. 19-cv-6034, 2019 WL 6916099 (S.D.NY. Dec. 19, 2019)...............................28

*Shankar v. Accenture LLP*,
 No. 21-cv-3045, 2023 WL 2908660 (S.D.N.Y. Feb. 14, 2023) ...............24, 25, 26

*Shkoza v. Nyc Health & Hospitals Corp.*,
 No. 20-cv-3646, 2024 WL 1116145 (S.D.N.Y. Mar. 13, 2024)............................20

*Slaughter v. Am. Bldg. Maintenance Co. of New York*,
 64 F. Supp. 2d 319 (S.D.N.Y. 1999).....................................................................32

*Staten v. City of N.Y.*,
 653 F. App'x 78 (2d Cir. 2016) .............................................................................11

*Styles v. Westchester Cty.*,
 No. 18-cv-12021, 2020 WL 1166404 (S.D.N.Y. Mar. 10, 2020)...........................18

*Tepperwien v. Entergy Nuclear*,
 663 F.3d 556 (2d Cir. 2011)..................................................................................27

*Tousst v. City of New York*,
 No. 19-cv-1239, 2020 WL 3978317 (S.D.N.Y. June 29, 2020) .............................12

*Tsatsani v. Walmart, Inc.*,
 No. 19-cv-9063, 2020 WL 6688939 (S.D.N.Y Oct. 26, 2020)...............................32

*Walker v. Triborough Bridge & Tunnel Auth.*,
No. 21-cv-474, 2021 WL 5401483 (S.D.N.Y. Nov. 18, 2021)................................13

*Ward v. Cohen Media Publ'ns LLC*,
No. 22-cv-06431, 2023 WL 5353342 (S.D.N.Y. Aug. 21, 2023)...........................19

*Weekes v. Jetblue Airways Corp.*,
No. 21-cv-1965, 2022 WL 4291371 (E.D.N.Y. Sept. 16, 2022) ...........................22

*Wellner v. Montefiore Med. Ctr.*,
No. 17-cv-3479, 2019 WL 4081898 (S.D.N.Y. Aug. 29, 2019)...........................18

*Wessinger v. OSI Rest. Partner's LLC*,
No. 5:14-cv-00175, 2014 WL 5168702 (N.D.N.Y. Oct. 14, 2014).......................22

*Wilson v. New York*,
No. 17-cv-5012, 2021 WL 2987134, at *6 (E.D.N.Y. July 15, 2021), *aff'd in part, vacated in part, remanded*, No. 21-1971-CV, 2022 WL 17587564 (2d Cir. Dec. 13, 2022) ...............................................16

*Zuckerman v. GW Acquisition LLC*,
No. 20-cv-8742, 2021 WL 4267815 (S.D.N.Y. Sept. 19, 2021) ...........................25

**Statutes**

28 U.S.C. § 1367(c)(3)...................................................................................34

42 U.S.C. § 1981, *et seq*...........................................................................2, 23

42 U.S.C. § 2000e-5(e)(1).................................................................................10

Age Discrimination in Employment Act of 1967 ...................................... *passim*

Civil Rights Act of 1964 Title VII......................................................... *passim*

Family and Medical Leave Act................................................................ *passim*

N.Y. Admin. Code § 8-502(d) .............................................................................10

N.Y. Exec. Law § 296 et seq. ..............................................................................2

New York City Human Rights Law...................................................................1, 28

**Other Authorities**

29 C.F.R. § 825.302(a).......................................................................................30

29 C.F.R. § 825.303(a)-(c)..................................................................................32

Fed. R. Civ. P. 12(b)(6)........................................................................................................9, 34

N.Y.C. Admin. Code § 8-101 *et seq.* ........................................................................ *passim*

N.Y.C. Admin. Code § 8-102 ....................................................................................................24

N.Y.C. Admin. Code § 8-107(1)................................................................................................22

Defendants TikTok Inc. ("TTI"), ByteDance Ltd. ("BDL"), and ByteDance Inc. ("BDI") (collectively, "Defendants") respectfully submit this Memorandum of Law in Support of their Partial Motion to Dismiss. As set forth in detail below, Plaintiff Katie Ellen Puris' ("Plaintiff") Second Amended Complaint ("SAC") fails to state a claim in several key ways, and accordingly, several of Plaintiff's claims, including her gender, age, and disability discrimination claims, retaliation claims, New York City Human Rights Law interference claim, and her Family and Medical Leave Act interference claim, must be dismissed, with prejudice.[1]

## I.    PRELIMINARY STATEMENT

Plaintiff purports to bring several causes of action against Defendants TTI, BDI, and BDL, including claims for discrimination, hostile work environment, retaliation, interference with protected rights, and interference with Plaintiff's FMLA rights. The SAC, however, is a thinly veiled attempt to reframe her documented poor performance as discrimination, when nothing could be further from the truth.

The sprawling, 108-page SAC contains pages and pages of information Plaintiff cannot reasonably claim relate to her allegations, and is, on its face, a bold attempt to litigate Plaintiff's employment termination in the court of public opinion, with no basis in fact or law. In fact, much of the operative complaint contains allegations that have absolutely no bearing on the claims for which Plaintiff seeks relief. Despite its length, the SAC is bare of sufficient allegations relating to Plaintiff, her employment and any claims of discrimination, retaliation, or interference with any legal rights.

---

[1] This Court, in its July 31, 2024 Order, made clear that it is "unlikely that the plaintiff will have a further opportunity to amend." (ECF No. 60.) Given this is Plaintiff's third attempt at pleading viable claims, any claims this Court dismisses must be dismissed with prejudice, as Plaintiff cannot cure her Second Amended Complaint, and should not be permitted a *fourth* attempt to do so.

Accordingly, Defendants TTI, BDI, and BDL move to dismiss Plaintiff's age and gender discrimination, retaliation, and hostile work environment claims pursuant to Title VII of the Civil Rights act of 1964 ("Title VII"),[2] the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"), her age discrimination claim pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), her disability discrimination claims pursuant to the NYSHRL and NYCHRL, her NYCHRL interference claim, and her FMLA interference claim.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff's Initial Employment with BDI.

In or around December 2019, Plaintiff was hired by BDI as the Managing Director and the U.S. Head of Business Marketing. (SAC ¶ 145.) Plaintiff was never employed by BDL or TTI, and at all times, Plaintiff was employed by BDI. In this role, Plaintiff "developed and built the North American Business Marketing organization," which includes laying out the "mission, vision, goals and deliverables" for the organization. (*Id.* ¶ 152.) To effectuate this goal, Plaintiff alleges that she was given a headcount of approximately 40 employees to help build the North American Business Marketing team. (*Id.* ¶ 154.) Plaintiff was also tasked with preparing for the 2020 Consumer Electronic Show ("CES"), a "critical tradeshow," developing and executing strategic plans, and managing large projects. (*Id.* ¶¶ 157-59.)

In this role, Plaintiff received generally positive reviews and good feedback, as demonstrated in both of the reviews she received in 2020. (*Id*. ¶¶ 162, 180-85.) Accordingly, in early 2020, Plaintiff alleges she was asked to lead the Global Business Marketing ("GBM") team. (*Id.* ¶ 164.) Plaintiff accepted this role and claims to have grown the team to "over 100

---

[2] Plaintiff's SAC improperly brings age discrimination allegations under Title VII. (SAC ¶ 433.) However, Title VII offers no such protection. 42 U.S.C. § 1981, *et seq.* (prohibiting discrimination "because of such individual's race, color, religion, sex, or national origin").

employees on opposite coasts and another continent." (*Id.* ¶¶ 169-71.) In her first review as the lead for GBM, Plaintiff received ratings of "meeting expectations" and "exceeding expectations."[3] (*Id.* ¶¶ 180-85.) However, Plaintiff began to struggle in her new role.

        1.      <u>Plaintiff Begins to Perform Poorly for BDI While Supporting GBM.</u>

Despite Plaintiff's unsupported and conclusory allegations regarding the treatment she experienced while working at BDI, Plaintiff's SAC is unsurprisingly silent about specific allegations regarding any discrimination Plaintiff herself experienced. Instead, the SAC attempts to re-frame poor performance and decision-making as discrimination.

For example, Plaintiff claims that in August 2020, "then-President Donald Trump threatened to shut down TikTok in the United States if BDL did not sell the American arm of TikTok to an American company." (*Id.* ¶ 224.) Plaintiff further claims that this resulted in economic hardship which led to a hiring slowdown. (*Id.* ¶ 225.) Despite being aware of these external pressures, and as the world was in the midst of the COVID-19 pandemic, Plaintiff requested an "increased budget and headcount in 2021." (*Id.* ¶ 226.) Plaintiff claims that her teams worked together and ultimately prepared a presentation that "broke down key deliverables for the sub-teams in Ms. Puris' organization, and was presented to many other groups, including the strategy team that was to lead the effort around budget and headcount planning." (*Id.* ¶ 231)

Plaintiff claims that this plan was approved in late December of 2020, but that Lidong Zhang ("Zhang") elected to "revisit and reverse course." (*Id.* ¶ 234.) Somehow, Plaintiff attempts to tie Zhang's purported rejection of her poorly thought-out plan to raise costs and hire new staff in the midst of a global pandemic and immense external pressure as discrimination, and not the

---

    [3] According to the SAC, "TikTok's performance rating system includes the following ratings from lowest to highest: F (not meeting expectations); I (improvement needed); M-, M and M+ (meets expectations); and E-, E and E+ (exceeds expectations). M- and below are considered "low" ratings, M and M+ are considered "mid" ratings, and E- and above are considered "high" ratings." (SAC ¶¶ 181-83.)

result of her poor leadership and decision-making. After Plaintiff's ill-destined plan was allegedly rejected, Plaintiff then claims that Corinna Chen ("Chen") began micromanaging her team, causing Plaintiff and her team to have to complete "tactical tasks" that Plaintiff appears to have found "exhausting." (*Id.* ¶¶ 235-36.) Despite Plaintiff's struggles to carry out the duties inherent to her position, she points to nothing that would support her allegations of "gender animus." (*Id.* ¶ 242.) Instead, the SAC describes some of the issues Plaintiff had in the workplace, such as expressed concern with how Puris' team engaged with regional business marketing groups. (*Id.* ¶ 241.) Further, aware that her claims are unsupported, Plaintiff speculates and invents purported discriminatory reasons for normal business functions. In fact, Plaintiff makes much of apparent requests from Jean Zhao ("Zhao"), a Strategy and Operations Director for GBM, to solicit feedback on Plaintiff, alleging, with no support, that these surveys were sent to "cross-functional partners and regional marketing team" members that Plaintiff worked with to "encourage negative feedback." (*Id.* ¶ 239.)

As her inability to prepare a viable strategic plan in the face of external factors impacting business operations demonstrated, Plaintiff had begun struggling in her role, and this was also reflected in her performance reviews. Plaintiff claims that in January 2021, Human Resources Business Partner, Carl Rivers ("Rivers"), was "actively soliciting negative feedback on Ms. Puris," a decision which she claims, without support, is due to her sex. (*Id.* ¶¶ 246-48.) Plaintiff provides no explanation or description that supports the theory that Rivers acted in a manner motivated by discrimination. In fact, Plaintiff does not allege that Rivers made any comments to suggest he held any animus against women or acted with discriminatory intent in any other way.

As she is unable to support this assertion, Plaintiff next claims that the feedback she received was "very gendered," as she was "accused of being demanding, defensive and a

perfectionist to a fault." (*Id.* ¶ 250) For example, on or about February 4, 2021, Plaintiff alleges that Blake Chandlee ("Chandlee"), her direct supervisor, told her that she "had a tendency to go from 'being this ball of energy like the sun' to 'like a dark star… the energy just gets sucked out of the room.'" (*Id.* ¶ 251.) Despite her subjective feelings on these alleged comments, Plaintiff does not identify why commentary on her ability to work with her peers and subordinates, as well as her general demeanor in the workplace, were based in discriminatory animus.

Instead of taking the legitimate feedback about her performance to heart and adjusting her performance accordingly, Plaintiff elected to disregard the feedback she received when she was invited to attend and participate in a bi-monthly meeting held by Zhang in February 2021. (*Id.* ¶ 253.) After the presentation, Plaintiff believed Zhang was not happy "because she celebrated her team's success and achievements," which Plaintiff alleges, without support, is because Zhang "believes that women should always remain humble and express modesty." (*Id.* ¶ 254.) After this meeting, Chandlee, provided feedback on the meeting by informing her that these presentations should not focus on the team's past successes and other displays of self-aggrandizement. (*Id.* ¶ 263.) Plaintiff, without any basis, interpreted these legitimate critiques to be because of her sex. (*Id.* ¶ 264.)

By the "second quarter of 2021," based on her subjective perceptions of her work experience, Plaintiff claims that it was very evident that the ultimate goal was to force her to end her employment with BDI. Plaintiff claims that she received a "poor" performance review as a result, receiving an "M" performance rating in 2020, even though she admits that an "M" means meeting expectations. (*Id.* ¶¶ 265-66.)

Plaintiff further claims that in 2021, her employer began promoting the "996" culture, which required employees to work from 9 A.M. to 9 P.M., for six days a week. (*Id.* ¶ 279.)

Plaintiff alleges this culture favored younger male employees who were less likely to have childcare and other family obligations. (*Id.* ¶ 280.) Plaintiff alleges that this culture "was more hostile to female employees." (*Id.* ¶ 281.)[4]

### B.    Plaintiff Transitions to the Brand and Creative Organization and Continues to Perform Below Expectations.

In or around May 2021, Chandlee and Kate Barney ("Barney") began to express that they wanted Plaintiff to transition out of her role as the lead of the GBM team. (*Id.* ¶ 285.) According to the SAC, there was "a bit of a ding in confidence" and "lack of trust" in Plaintiff's performance. (*Id.* ¶¶ 287, 290.) Despite what Plaintiff perceived as poor performance reviews, negative feedback, and plain evidence that Plaintiff was struggling in her role, Plaintiff claims she did not know why she was being transitioned to a new position. (*Id.* ¶ 286.) However, after inquiring about the move, Plaintiff admits that there was a need for a Head of Business Marketing "with more operational experience." (*Id.*)

In or around May 2021, Plaintiff learned that she was being moved out of the Business Marketing organization and would begin reporting to Nick Tran ("Tran"), Global Head of Marketing in her new role as the Head of Global Brand and Creative Organization in or around June 2021. (*Id.* ¶¶ 293-97.) In late 2021 or early 2022, after disagreements with leadership over the trajectory of his department, Tran's employment was terminated. (*Id.* ¶¶ 313-30.)

Following Tran's termination, Plaintiff began reporting to V Pappas ("Pappas"),[5] in V's role as the new interim Global Head of Marketing, while also continuing to be the Chief Operating Officer. (*Id.* ¶ 335.) In about February 2022, Plaintiff alleges she met with Pappas,

---

[4] This is an example of Plaintiff projecting her own personal sexist belief onto Defendants. Her beliefs that men do not share equal responsibility to raise their children is antiquated.

[5] V Pappas is referred to as Vanessa Pappas in the SAC.

who stated there would be changes to TikTok's overall marketing strategy. (*Id.* ¶ 339.) However, these changes proved to be difficult for Plaintiff and her team. (*Id.* ¶ 341.)

For example, in early 2022, Plaintiff prepared a slideshow presentation about new marketing strategies for Pappas' review. (*Id.* ¶ 346.) Upon review of the presentation, Pappas made clear that the presentation was "not up to her standards." (*Id.* ¶ 347.) Pappas informed Plaintiff that she would receive an "I" review in her upcoming evaluation, which Plaintiff claims "shocked" her. (*Id.* ¶¶ 348, 352.) Accordingly, given Plaintiff's previous performance and lack of improvement, Plaintiff, in April 2022, received a written negative review from Pappas, which included two "I's" and two "M's." (*Id.* ¶ 361.)

Shortly after receiving her performance review, Plaintiff made an internal complaint about her performance review, alleging that her review was based on "discriminatory animus towards [Plaintiff's] age." (*Id.* ¶¶ 366-67.) Following these complaints, Plaintiff alleges that Pappas left her out of meetings. (*Id.* ¶ 369.) On May 20, 2022, Plaintiff alleges that she was informed that Human Resources completed their investigation of her age and disability discrimination complaints and "found no wrongdoing." (*Id.* ¶ 375.)[6]

In or around May or June 2022, Plaintiff began reporting to Zuber Mohammed ("Mohammed"), the new interim Global Head of Marketing. (*Id.* ¶¶ 370-71.) Plaintiff alleges that while Mohammed was her supervisor, she struggled getting feedback on her performance, was allegedly told that she can no longer replace employees who left the company, and that several contractors on her team would be let go. (*Id.* ¶¶ 375-80.) Plaintiff concludes, without any factual support, that these requests were because of her gender, age, and health status. (*Id.* ¶ 383.)

---

[6] Notably, Plaintiff failed to raise allegations of sex or gender discrimination in her April 2022 complaint to HR, despite claims in the SAC that Zhang previously discriminated against her on these bases.

### C.    The Cannes Incident

TTI, BDL, and BDI incorporate by reference the description of an incident in Cannes as described in the Memorandum of Law supporting Defendants' Motion to Compel Arbitration, filed on September 23, 2024. (ECF No. 82, at p. 4-7.)

### D.    Plaintiff's Employment is Terminated.

Finally, after years of performance issues, documented negative feedback, and middling to poor performance reviews, Plaintiff's employment with BDI was terminated in September 2022. (SAC ¶ 424.) A few days prior to her termination, knowing that the writing was on the wall, Puris reiterated previous complaints regarding age and sexual harassment claims that were already fully investigated. (*Id.* ¶ 423.) In addition, for the first time, she vaguely complained of gender discrimination. (*Id.*)

## III.    RELEVANT PROCEDURAL HISTORY

Plaintiff filed a Charge of Discrimination against TTI and BDI with the Equal Employment Opportunity Commission ("EEOC") on May 23, 2023 (the "Charge"). (*Id.* ¶ 61.) Plaintiff filed the Original Complaint on February 8, 2024, against TTI and BDL only. (ECF No. 1.) Plaintiff then filed the First Amended Complaint ("FAC") on May 6, 2024, adding BDI, Douyin Ltd. ("Douyin") and Zhang as Defendants. (ECF No. 21.) On July 19, 2024, Defendants TTI, BDL, and BDI filed a motion to compel arbitration to enforce the valid arbitration agreements Plaintiff signed during the course of her employment. (ECF Nos. 50-51.) On July 31, 2024, Douyin and Zhang filed a motion to dismiss the FAC for lack of proper service. (ECF Nos. 54-59.)

On July 31, 2024, this Court *sua sponte* ordered "that the plaintiff shall file any amended complaint by August 21, 2024," and made it clear that "[i]t is unlikely that the plaintiff will have

a further opportunity to amend." (ECF No. 60.) On August 21, 2024, Plaintiff filed the SAC. (ECF No. 65.)

Given the filing of the SAC, the pending motions to dismiss and compel were dismissed as moot and without prejudice. (ECF No. 66.) The Court further ordered Defendants to respond to the SAC by September 23, 2024. (*Id.*) On September 9, 2024, Douyin and Zhang filed their motion to dismiss the SAC. (ECF Nos. 69-74). On September 23, 2024, Defendants BDI, BDL, and TTI filed a Motion to Compel Arbitration. (ECF Nos. 79-82.) Defendants now move to dismiss most of the claims contained in the SAC.

## IV.    ARGUMENT

### A.    Legal Standards

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Satisfying this standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . ." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* (internal citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Here, like the initial Complaint, the SAC fails to "possess enough heft" to state a viable claim. *Twombly* at 557-58 (internal citations omitted).

Here, the SAC contains several claims that cannot survive this Motion to Dismiss.

### B.    Plaintiff's Claims Based on Time-Barred Conduct Must Be Dismissed.

First, despite Plaintiff's attempt to bring allegations based on conduct dating back to at least 2020, if not earlier, much of this conduct is time-barred and cannot be the basis for suit.

Under Title VII, an aggrieved person must file an administrative charge within 300 days of the alleged discriminatory act. *See* 42 U.S.C. § 2000e-5(e)(1); *see also Nat'l R.R. Pass. Corp. v. Morgan*, 536 U.S. 101, 108-09 (2002). Claims pursuant to the ADEA must be filed in the same time frame. *Langella v. Mahopac Cent. Sch. Dist.*, No. 18-cv-10023, 2020 WL 2836760, at *4-5 (S.D.N.Y. May 31, 2020). NYSHRL and NYCHRL claims must be filed within three years. *See* N.Y. Admin. Code § 8-502(d).

Here, Plaintiff filed the Charge on May 23, 2023, and filed the initial Complaint on February 8, 2024. Accordingly, Plaintiff's Title VII and ADEA claims are time-barred to the extent they concern conduct prior to July 27, 2022 (*i.e.*, 300 days before May 23, 2023).

Plaintiff's NYSHRL and NYCHRL claims are time-barred to the extent they concern conduct arising before May 23, 2020.

   1. <u>Plaintiff's Title VII and ADEA Claims Based on Time-Barred Conduct Must Be Dismissed.</u>

Any gender discrimination, hostile work environment, or retaliation claims pursuant to Title VII, and any age discrimination claims pursuant to the ADEA, must be dismissed as time-barred to the extent they are based on conduct prior to July 27, 2022.

Plaintiff was hired as the Managing Director and the U.S. Head of Business Marketing in or around December 2019, and then was asked to lead the Global Business Marketing role in early 2020. (SAC ¶¶ 143, 164.) She remained in this role until in or around June 2021. (*Id.* ¶ 293.) Any conduct Plaintiff claims constitutes discrimination pursuant to any federal statute, from her time in either of these roles, is time-barred because it occurred prior to July 27, 2022.[7]

---

[7] For example, Plaintiff alleges that Rivers "actively solicit[ed] negative feedback on Ms. Puris," because of her sex. (SAC ¶¶ 246-48.) Plaintiff then asserts that her feedback in early 2021 was "very gendered" because she was "accused of being demanding, defensive, and a perfectionist." (*Id.*) Plaintiff then alleges that Zhang's criticism of her February 2021 presentation was because of her sex. (*Id.* ¶ 264.)

Then, in June 2021, Plaintiff began reporting to the Global Head of Marketing, and makes several unfounded allegations about discrimination she experienced while in this role. For example, in or around about February 2022, Plaintiff, who was reporting to Pappas at the time, alleges that Pappas' negative performance review and subsequent feedback were discriminatory because of her age, and that she filed a complaint with Human Resources regarding the same. (*See e.g., id.* ¶ 359.) Even assuming *arguendo*, that Plaintiff's allegations have merit, which they do not, her Title VII and ADEA claims simply cannot be based on time-barred conduct occurring while Plaintiff was the Managing Director and the U.S. Head of Business Marketing, leading the GBM team, or any conduct at all prior to July 27, 2022.

Further, despite its length, the SAC pleads only a handful of alleged discriminatory actions that are discrete in nature and accordingly, the continuing violation doctrine is not implicated. "Under the continuing violation doctrine, if a plaintiff has experienced a continuous practice and policy of discrimination . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Staten v. City of N.Y.*, 653 F. App'x 78, 80 (2d Cir. 2016) (internal citations omitted). If this doctrine applies, and "if timely acts are sufficiently related to acts preceding the limitations period, [the court] considers the entire scope of the claim, including behavior outside the limitations period." *Id.* "To trigger such a delay, the plaintiff must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (internal quotation marks omitted). "Importantly, the continuing violation doctrine does not apply to discrete unlawful acts, even if the discrete acts were undertaken pursuant to a general policy that results in other discrete acts occurring within

the limitations period." *Rivas v. N.Y. State Lottery*, 745 F. App'x 192, 193 (2d Cir. 2018) (internal quotations omitted).

As Plaintiff has failed to allege that she experienced a continuous policy of discrimination throughout her employment, she cannot invoke the continuing violation doctrine here to permit conduct that is time-barred to support gender discrimination, hostile work environment, and retaliation claims pursuant to Title VII or age discrimination claims pursuant to the ADEA. *See Loth v. City of N.Y.*, No. 20-cv-9345, 2021 WL 4311569, at *5 (S.D.N.Y. Sept. 21, 2021) (declining to apply the continuing violation doctrine and noting that "[the p]laintiff has only alleged discrete acts of discrimination and has failed to identify any continuing discriminatory policy of practice."). Further, given Plaintiff makes no allegations of misconduct between July 27, 2022 and the termination of her employment in September 2022, there are no timely acts relating back to any alleged untimely acts of discrimination, and there is nothing to revive her time-barred claims. *Tousst v. City of New York*, No. 19-cv-1239, 2020 WL 3978317, at *3 (S.D.N.Y. June 29, 2020) (dismissing Title VII discrimination claims that were filed outside of the 300 days statute of limitations); *Burgess v. New Sch. Univ.*, No. 23-cv-4944, 2024 WL 4149240, at *9-10 (S.D.N.Y. Sept. 11, 2024) (discrete incidents "cannot be actionable simply by characterizing each of them as part of a continuing violation.").

### C.    Plaintiff's Gender Discrimination Claims Fail.

Plaintiff's causes of action for discrimination on the basis of gender fail because Plaintiff cannot point to a single fact or allegation indicating that Plaintiff's membership in a protected category played any part in any adverse employment action she claims to have suffered.

1.    Plaintiff's Gender Discrimination Claim Pursuant to Title VII Must be Dismissed.

"To prevail on a Title VII disparate treatment claim, a plaintiff must ultimately prove that '(1) [s]he is a member of a protected class; (2) [s]he is competent to perform the job or is performing his duties satisfactorily; (3) [s]he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class.'" *La Grande v. DeCrescente Distrib. Co., Inc.*, 370 F. App'x 206, 211 (2d Cir. 2010) (quoting *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005)). "At the pleading stage, a plaintiff alleging discrimination in violation of Title VII must provide facts that give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Chinnery v. N.Y. State Office of Children & Family Servs.*, 10-cv-882, 2012 WL 5431004, at *2 (S.D.N.Y. Nov. 5, 2012) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).

Plaintiff fails to demonstrate a *prima facie* case of gender discrimination for any non-time-barred claims pursuant to Title VII because she can point to no evidence that her gender was a motivating factor in the way she was treated and in the termination of her employment. *Walker v. Triborough Bridge & Tunnel Auth.*, No. 21-cv-474, 2021 WL 5401483, at *3 (S.D.N.Y. Nov. 18, 2021). Given the documented performance deficiencies and poor reviews, Plaintiff cannot plausibly allege that her performance was adequate. Consequently, Plaintiff fails to meet the second prong of a *prima facie* Title VII disparate treatment claim, requiring that she is performing her job satisfactorily.

Plaintiff was not performing well in her position, even reading the SAC in the light most favorable to her. For example, Plaintiff alleges in the SAC that external political pressures caused a significant threat and impact to TTI operations, including a "hiring slowdown." (SAC ¶

13

224.) Despite being on notice of these underlying business concerns, Plaintiff, a member of senior leadership, elected to ignore these business pressures, refused to reconsider her goals in light of external circumstances, and instead of adjusting her plans, "remained optimistic" that she would receive an increased budget and headcount despite these pressures. (*Id*. ¶ 226.) Plaintiff claims that her unrealistic decision, to operate as if nothing had changed in the face of circumstances that may impact business operations, including the COVID-19 pandemic, was rejected, and she allegedly began to face "micromanaging" by Chen, Zhao, and Zhang. (*See, e.g. id.* ¶ 235.)

However, the allegations in the SAC show both that Plaintiff was aware of significant information that would impact business decisions and elected to disregard this information and push forward with her plan. Plaintiff cannot claim that the alleged rejection of her ill-fated and poorly thought-out plan is the result of "gender animus," when it is instead a result of her poor performance. Further still, Plaintiff repeatedly received negative feedback on her work product from her supervisors. (*See e.g. id.* ¶ 287 (Plaintiff is told that there is a lack of confidence in her leadership)); (*id.* ¶ 346 (Plaintiff receives negative feedback about a presentation she prepared.)) Plaintiff's poor performance led to the termination of her employment, and Plaintiff points to absolutely nothing other than bare, conclusory statements in support of gender discrimination.

Similarly, Plaintiff cannot claim that her poor performance reviews were discriminatory when they were supported by her own poor performance. As an initial matter, courts in this Circuit have long held that "a negative performance review . . . do[es] not ordinarily constitute adverse action" for purposes of a discrimination claim. *Mooney v. City of N.Y.*, No. 18-cv-328, 2018 WL 4356733, at *5 (S.D.N.Y. Sept. 12, 2018). Assuming *arguendo* Plaintiff's negative performance reviews constitute an adverse action, her subjective belief that her performance was

satisfactory is insufficient to form the basis of a discrimination claim. For example, Plaintiff claims that she began to receive poor performance reviews after her transition to lead the GBM team. In this new position, Plaintiff had a new and different supervisor who may impose different standards and assessment of her work performance. *See Orisek v. Am. Inst, of Aeronautics and Astronautics*, 938 F. Supp. 185, 191 (S.D.N.Y. 1996) ("A new manager is allowed to appraise an employee's work according to his or her own expectations, even if those expectations are contrary to a prior manager's expectations."); *Pergament v. Fed. Express Corp*., No. 2:03-cv-1106, 2007 WL 1016993, at *12 (E.D.N.Y. Mar. 30, 2007) ("fact that [plaintiff] had received generally positive evaluations from her previous ... supervisor" did not support finding of pretext in defendant's decision to terminate plaintiff based new supervisor's negative assessments).

While she was still employed as a Managing Director and the U.S. Head of Business Marketing, Plaintiff was clearly better able to handle the role and responsibility of that position. According to the SAC, Plaintiff's March 2020 review was "excellent" with her reviewers having "great things to say." (SAC ¶ 162.) Indeed, it appears that her March 2020 review does highlight the contributions Plaintiff made in her role, with one reviewer going as far as to claim: "I could not have imagined the change Katie would bring to our team in the short amount of time she has joined as our leader," with other reviewers similarly expressing great feedback. (*Id*.) Further, Plaintiff again claims to have received great performance reviews – a review that does not appear to encompass much of her time in her new position - in her August 2020 performance review. (*Id*. ¶ 180.) In sum, according to the SAC, when Plaintiff was performing well, she received positive feedback. The evidence shows that when Plaintiff's performance warranted positive feedback, positive feedback is what she received. However, when her performance began to

suffer, Plaintiff elected to disregard the feedback she received, and did not attempt to adjust her performance, accordingly, leading to negative reviews. *See Missick v. City of New York*, 707 F. Supp. 2d 336, 350 (E.D.N.Y. March 22, 2010) ("The mere fact of past satisfactory performance, followed by negative feedback, is not suggestive of impermissible animus.").

Plaintiff cannot now turn around and claim that her subsequent performance reviews were the result of discrimination. For example, despite allegations that she received a "discriminatorily middling performance rating," (SAC ¶ 246), Plaintiff provides no evidence to support the claim that her performance review was anything other than the result of her actual performance. Plaintiff instead takes issue with the amount of reviewers solicited to provide her review, (*id.* ¶ 248), and mischaracterizes the reviews that she receives as "[a]rtificially depressed," when in fact her "solid" rating of an M was, at that time, an accurate reflection of Plaintiff's employment.[8] *Grant v. N.Y. Times Co.*, No. 16-cv-03175, 2017 WL 4119279, at *6-7 (S.D.N.Y. Sept. 14, 2017) (granting motion to dismiss gender discrimination claims when "the inference that [the plaintiff's] performance review . . . [was] . . . motivated by a discriminatory animus against [the plaintiff] because she is a woman is weak.").

Further, Plaintiff lists some of the "gender" comments she alleges were made during the course of her employment. For example, Plaintiff claims she was told that she was "demanding, defensive, and a perfectionist to a fault," which she claims evidence gender discrimination. (SAC ¶ 250.) She further claims that she was told she was "emotional" in her leadership style. (*Id.* ¶ 252.) However, none of the comments Plaintiff identifies are sufficient to establish a claim of gender discrimination. *See Sank v. City Univ. of New York*, 10-cv-4975, 2011 WL 5120668, at

---

[8] To the extent Plaintiff argues that her "M" rating was an adverse employment action, she cannot do so. *See Wilson v. New York*, No. 17-cv-5012, 2021 WL 2987134, at *6 (E.D.N.Y. July 15, 2021) *aff'd in part, vacated in part, remanded*, No. 21-1971-CV, 2022 WL 17587564 (2d Cir. Dec. 13, 2022) ("Though a negative performance evaluation can constitute an adverse employment action in the retaliation context, a performance evaluation that provides an overall rating of "meets expectations" is ordinarily not an adverse employment action.").

*1, 9 (S.D.N.Y. Oct. 28, 2011) (dismissing plaintiff's gender discrimination claim because "[t]he Complaint does not, for instance, allege that any specific decision-maker at [defendant] made comments to or about [plaintiff] from which discriminatory animus based on gender could reasonably be inferred."). At most, these comments constitute the type of stray remarks that are simply not actionable pursuant to the law. *LaSalle v. City of N.Y.*, No. 13-cv-5109, 2015 WL 1442376, at *15 (S.D.N.Y. Mar. 30, 2015) ("Stray remarks by non-decision-makers or by decision-makers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of [the] decision.").

Plaintiff also fails to identify any viable comparators outside the protective group that she claims were treated better than she was. *See Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d 301, 316 (S.D.N.Y. 2015) (dismissing complaint because plaintiff "provide[d] no details" about the alleged employees who were "less qualified" than him); *Marcus v. Leviton Mfg. Co.*, No. 15-cv-656, 2016 WL 74415, at *3 (E.D.N.Y. Jan. 6, 2016) (dismissing case because plaintiff did not factually show "how" the plaintiff and alleged comparator were "similarly situated"); *Morales v. New York*, No. 05-cv-5006, 2010 WL 11623479, at *10-11 (E.D.N.Y. Aug. 30, 2010) (dismissing gender discrimination claim because "[a]part from the vague and unsubstantiated claims by plaintiff herself, the record does not provide any support for the conclusion that male" comparators received any preferential treatment); *Durden v. Metro Transit. Auth.*, No. 17-cv-5558, 2018 WL 3360757, at *3-4 (S.D.N.Y. July 10, 2018) (dismissing sexual harassment claim where plaintiff failed to bring forth any comparator evidence and there are no allegations that defendant investigated into alleged misconduct of the opposite sex any differently).

Plaintiff simply does not allege the requisite factual detail for her claims to cross from possible to plausible. Indeed, several critical allegations are offered "upon information and belief." (*See, e.g.,* SAC ¶ 41 (alleging Plaintiff was chastised for asking about compensation when men were not similarly reprimanded, and alleging without support men did not face chastisement for reporting their team successes.)) It is well-settled that a "plaintiff may plead facts upon information and belief only in limited circumstances." *May Flower Int'l, Inc. v. Tristar Food Wholesale Co. Inc.*, No. 21-cv-02891, 2022 WL 4539577, at *4-5 (E.D.N.Y. Sept. 28, 2022). Further, "statements made upon information and belief must be supported by some factual allegations making them plausible." *Id.*; *see also Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018) ("A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory."). Here, Plaintiff makes several critical allegations upon information and belief without sufficient supporting factual allegations.

Ultimately, Plaintiff cannot "allege that the employer took adverse action against her at least in part for a discriminatory reason," as she fails to allege "facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Styles v. Westchester Cty.*, No. 18-cv-12021, 2020 WL 1166404, at *8 (S.D.N.Y. Mar. 10, 2020) (emphasis added) (internal quotation and citation omitted).

2.    <u>Plaintiff's Gender Discrimination Claims pursuant to the NYSHRL<br>and the NYCHRL Must Be Dismissed.</u>

To establish a gender-discrimination claim under the NYCHRL, "the plaintiff need only demonstrate . . . that she has been treated less well than other employees because of her gender." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (internal quotation marks omitted). "[T]he NYCHRL is not a general civility code and a defendant is not

liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives." *Leizerovici v. HASC Ctr. Inc.*, No. 17-cv-3605, 2018 WL 1114703, at *11-12 (E.D.N.Y. Feb. 27, 2018). The NYSHRL's 2019 amendments made the standard for sustaining claims under the NYSHRL "closer to the standard" under the NYCHRL. *See Wellner v. Montefiore Med. Ctr.*, No. 17-cv-3479, 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019).

Here, Plaintiff cannot establish a gender discrimination claim pursuant to either the NYSHRL or the NYCHRL, even given the relaxed standards of these claims.[9] *Ward v. Cohen Media Publ'ns LLC*, No. 22-cv-06431, 2023 WL 5353342, at *15 (S.D.N.Y. Aug. 21, 2023) (original brackets and citation omitted) ("even under the more lenient requirements of the NYCHRL, [a] plaintiff's claims must be more than conclusory or speculative to survive a motion to dismiss."). Plaintiff makes several allegations of miscellaneous workplace grievances – but crucially, as discussed above, fails to assert factual allegations sufficient to show that any of the alleged harassment is due to her gender or any other protected status and fails to show that she was treated well less than a comparator.

Plaintiff will not be able to demonstrate that she was treated less well as the result of her gender, given her documented performance failures and repeated decisions to disregard substantive feedback. *Johnson v. Andy Frain Services, Inc.*, No. 12-cv-4454, 2014 WL 2805113, at *3 (E.D.N.Y. June 20, 2014) (dismissing plaintiff's gender discrimination claims under Title VII, NYSHRL, and NYCHRL because "[e]ven construed liberally, [p]laintiff's

---

[9] Given the amendments to the NYSHRL in 2019, "[t]he question is how much closer the NYSHRL and NYCHRL standards now are. The case law . . . has yet to definitively resolve whether the NYSHRL's liability standard is now coextensive with that of the NYCHRL, or whether it requires more, so as to impose a standard between federal and city law. . . .That said, New York courts have implied that the standards for employment-discrimination claims under the NYSHRL and the NYCHRL are now largely the same." *Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, No. 1:23-cv-01932, 2024 WL 3849192, at *21-22 (S.D.N.Y. Aug. 16, 2024) (internal citation and quotations omitted).

Second Amended Complaint does not provide any indication of how [d]efendant's alleged acts were connected to [plaintiff's] … gender."). Crucially, Plaintiff fails to identify how any of her alleged poor treatment, such as her performance reviews, bad feedback, and ultimate employment termination are connected to her gender. Plaintiff here has simply failed to allege that the conduct at issue was caused by a discriminatory motive. *Mihalik*, 715 F.3d at 110. She has, thus, failed to show that she "has been treated less well at least in part because of her gender." *Id.* (internal quotations omitted).

Defendants also incorporate the arguments and analyses regarding the sexual harassment claims as laid out in their motion to compel arbitration. (ECF No. 82.) In short, Plaintiff cannot plausibly allege that her claims of sexual harassment at Cannes constitute gender discrimination, given the allegations are entirely focused on an event occurring out of the country, at a dinner sponsored by another corporate entity, where the alleged bad actor is an employee of that entity and not of Defendants, and did not include conduct that was sexual in nature. *See King v. Aramark Servs. Inc*., 96 F.4th 546, 556-57 (2d Cir. 2024) (affirming the dismissal of NYSHRL claims when the underlying allegedly discriminatory conduct occurred outside of New York even when Plaintiff worked remotely in New York); *Henry v. Rising Ground*, No. 153458/2021, 2022 WL 2158368, at *8 (N.Y. Sup. Ct. Jun. 10, 2022) (guest of vendor was neither an employee nor agent of the employer, thus, the employer could not be held liable under the NYCHRL); *Leroy v. Delta Air Lines,* No. 21-267-cv, 2022 WL 12144507, at *3 (2d Cir. Oct. 27, 2022) (Summary Order) (plaintiff failed to allege that defendant's negligence permitted or facilitated the non-employees discriminatory conduct); *see also Shkoza v. Nyc Health & Hospitals Corp.,* No. 20-cv-3646, 2024 WL 1116145, at *7 (S.D.N.Y. Mar. 13, 2024) (noting that "[c]ourts have thus found isolated incidents of . . . physical conduct to be the type of petty slights and trivial

inconveniences that do not establish a NYCHRL claim") (internal citations and quotations omitted).

As Plaintiff is unable to demonstrate that she was treated less well because of her gender, Plaintiff's NYSHRL and NYCHRL claim must fail.

**D.    Plaintiff's Hostile Work Environment Claims Must Be Dismissed.**

1.    Plaintiff's Hostile Work Environment Claim pursuant to Title VII Must Fail.

A hostile work environment claim under Title VII requires a plaintiff to demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn v. City of New York*, 795 F.3d 297, 320-21 (2d Cir. 2015) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To prove the hostile work environment's existence, the Second Circuit requires a plaintiff to demonstrate "objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Meckler v. Cornell Univ.*, No. 23-cv-773, 2024 WL 3535488, at *8 (N.D.N.Y. July 25, 2024) (internal citation omitted). In conducting this analysis, the Second Circuit considers: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a 'mere offensive utterance;' and (4) whether the conduct unreasonably interfered with the plaintiff's work." *Daeisadeghi v. Equinox Great Neck, Inc.*, 794 Fed. Appx. 61, 64 (2d Cir. 2019). A plaintiff cannot prevail where they merely provide "non-conclusory factual allegations." *Meckler*, 2024 WL 3535488, at *8-9.

Here, Plaintiff makes no claims of alleged discriminatory conduct in the time between July 27, 2022 and the termination of her employment in September 2022. Accordingly, the only

actionable claim in support of a hostile work environment is the termination of Plaintiff's employment.[10] It is clear that a single, discrete act is not the type of severe or pervasive conduct contemplated here, and accordingly, Plaintiff simply cannot sustain a hostile work environment claim pursuant to Title VII. *Ekpe v. City of N.Y.*, No. 20-cv-9143, 2024 WL 1621207, at *5-6 (S.D.N.Y. Apr. 12, 2024) (noting that discrete allegations of discrimination do not rise to an "objectively severe and pervasive level," and dismissing Title VII hostile work environment claim).

<blockquote>

2.     Plaintiff's Hostile Work Environment Claims Pursuant to the NYSHRL and NYCHRL Must Fail.

</blockquote>

Plaintiff cannot make out a hostile work environment claim pursuant to either the post-2019 NYSHRL or the NYCHRL. As an initial matter, "The NYCHRL does not differentiate between discrimination and hostile work environment claims; rather, both are governed by N.Y.C. Admin. Code § 8-107(1)." *Weekes v. Jetblue Airways Corp.*, No. 21-cv-1965, 2022 WL 4291371, at *12 (E.D.N.Y. Sept. 16, 2022); *see Nguedi v. Fed. Reserve Bank of N.Y.*, 813 F. App'x 616, 617-18 (2d Cir. 2020) (noting when courts review "discriminatory treatment or hostile work environment claims under the NYCHRL, they must analyze whether a plaintiff is treated 'less well' because of a discriminatory intent."). Accordingly, Defendants rely on the above NYSHRL and NYCHRL gender discrimination analysis in demonstrating that Plaintiff

---

[10] The incident in Cannes is time-barred conduct for the purposes of a Title VII gender discrimination claim. However, even assuming *arguendo* that this conduct is not time-barred, Plaintiff cannot plausibly assert that nonsexual touching of one's arm constitutes the type of severe or pervasive conduct that is actionable under Title VII. Several courts have dismissed cases even where plaintiffs allege physical touching. *See, e.g., Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998), *abrogated in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (two alleged incidents involving an explicit sexual remark and inappropriate, deliberate touching did not establish a hostile work environment). The conduct alleged here does not rise to the level of sexual harassment under Title VII. *See Pitter v. Target Corp.*, No. 1:20-cv-00183, 2020 WL 8474858, at *8 (N.D.N.Y. Sept. 1, 2020); *Wessinger v. OSI Rest. Partner's LLC*, No. 5:14-cv-00175, 2014 WL 5168702, at *8 (N.D.N.Y. Oct. 14, 2014) (holding allegations that a supervisor gave plaintiff a back and shoulder rub twice failed to plausibly suggest sexual harassment severe or pervasive enough to alter the conditions of her employment and create an abusive working environment).

has not and cannot demonstrate that she has been subject to any inferior treatment on the basis of any protected category.

Defendants also incorporate the arguments and analyses regarding the sexual harassment claims as laid out in their motion to compel arbitration. (ECF No. 82.) In short, Plaintiff cannot plausibly allege that her claims of sexual harassment at Cannes constitute gender discrimination, given the allegations are entirely focused on an event occurring out of the country, at a dinner sponsored by another corporate entity, where the alleged bad actor is an employee of that entity and not of Defendants. *See King*, 96 F.4th at 556-57 (affirming the dismissal of NYSHRL claims when the underlying allegedly discriminatory conduct occurred outside of New York even when Plaintiff worked remotely in New York); *Henry*, 2022 WL 2158368, at *8 (guest of vendor was neither an employee nor agent of the employer, thus, the employer could not be held liable under the NYCHRL); *Leroy*, 2022 WL 12144507, at *3 (plaintiff failed to allege that defendant's negligence permitted or facilitated the non-employees discriminatory conduct).

### E.    Plaintiff's Title VII Age Discrimination Claim Fails.

Plaintiff's claims of age discrimination under Title VII must be dismissed because Title VII does not include age as a protected characteristic. 42 U.S.C. § 1981, *et seq*. ("because of such individual's race, color, religion, sex, or national origin"). Thus, to the extent that Plaintiff's age claims pursuant to Title VII must be dismissed as a matter of law. *See Napolitano v. Teachers Coll.*, 19-cv-09515, 2021 WL 4443143, at *3 (S.D.N.Y. Sept. 28, 2021) ("Plaintiff's claim as plead here is fundamentally incognizable as a matter of law. Title VII does not cover age-based discrimination.").

### F.    Plaintiff's Disability Discrimination Claims Under NYCHRL and NYSHRL Must Be Dismissed.

Plaintiff's disability discrimination claims pursuant to the NYSHRL and NYCHRL must

fail as well, for two crucial reasons – first, Plaintiff fails to put forth any allegations regarding any purported disability, and second, given that failure, she cannot claim any adverse action she experienced in the workplace is related to a disability she did not have.

"An employee alleging disability discrimination under the NYSHRL or the NYCHRL must show that (1) the defendant is a covered employer; (2) the plaintiff suffered from, or was regarded as suffering from, a disability within the meaning of the statute; (3) the plaintiff was qualified to perform the essential functions of the job, with or without a reasonable accommodation; and (4) she suffered an adverse employment action because of her disability or perceived disability." *Luzunaris v. Baly Cleaning Servs.*, No. 23-cv-11137, 2024 WL 3926708, at *15 (S.D.N.Y. July 29, 2024). The NYCHRL "provides even greater protection against disability-based discrimination[, however]." *Crawford v. Bronx Cmty. Coll.*, No. 22-cv-1062, 2024 WL 3898361, at *11 (S.D.N.Y. Aug. 21, 2024). "To survive a motion to dismiss NYSHRL and NYCHRL disability discrimination claims, a plaintiff must allege facts showing that her employer took adverse action against her, and that the action was taken because of her disability or perceived disability." *Shankar v. Accenture LLP*, No. 21-cv-3045, 2023 WL 2908660, at *4 (S.D.N.Y. Feb. 14, 2023).

Under the NYSHRL, the term "disability" is defined as an impairment, "which, upon the provision of reasonable accommodations, do[es] not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held." Executive Law § 292(21). The NYCHRL requires that a plaintiff plead facts showing a "physical, medical, mental or psychological impairment, or a history or record of such impairment." N.Y.C. Admin. Code § 8-102.

Plaintiff cannot establish a *prima facie* case of disability discrimination as the SAC fails

entirely to allege that Plaintiff had a qualifying disability, or that Plaintiff experienced any adverse action because of her alleged disability. Plaintiff has provided no details about any such ailments, provided no information about a diagnosis, or how her medical condition impacted her employment. She does not even allege that her ailments are disabilities under either the NYSHRL or the NYCHRL. *Zuckerman v. GW Acquisition LLC*, No. 20-cv-8742, 2021 WL 4267815, at *22-23 (S.D.N.Y. Sept. 19, 2021) (when alleging disability discrimination under the NYSHRL and NYCHRL on a motion to dismiss, plaintiff must allege they "suffer[] from or is regarded as suffering from a disability within the meaning of the [applicable] statute") (citing *Caskey v. Country of Ontario*, 560 F. App'x 57,58 (2d Cir. 2014)) (brackets omitted).

Plaintiff claims that she "she developed significant physical, mental and emotional medical conditions," that her health "deteriorat[ed]," and that she underwent several medical procedures during her employment. (SAC ¶ 282.) However, it appears that when Plaintiff expressed, in vague terms, how she felt unwell, the SAC confirms that "Ms. Barney assured Ms. Puris that she could take time off."[11] (*Id*. ¶ 284.) At most, Plaintiff claims to have "looked into" taking medical leave, but ultimately it appears she declined to pursue her leave option. (*Id*. ¶ 344.)

Further, while Plaintiff claims that she "met with her doctor 26 times over seven months, which led to numerous surgical procedures and other treatment," she fails to identify any alleged condition to clearly determine how or why it impacts her employment. *See Cornetta v. Town of Highlands*, 434 F. Supp. 3d 171, 186 (S.D.N.Y. 2020) (noting that just because an injury "may have required surgery, that does not mean that it qualified as a disability.").

Here, Plaintiff fails to "allege facts showing that her employer took adverse action against

---

[11] While Plaintiff does not make a failure to accommodate claim, she puts forth no allegations that, despite what appear to be repeated conversations with HR, she applied for, requested, or otherwise expressed a need for an accommodation.

her, and that the action was taken because of her disability or perceived disability," given that she fails to allege that she has a disability or that the employer perceived her as having a disability. *Shankar*, 2023 WL 2908660, at *4. Plaintiff certainly fails to show a causal connection between any disability or perceived disability discrimination and any adverse actions, such as her termination. *Id.* Accordingly, Plaintiff's disability discrimination claims must be dismissed.

### G.    Plaintiff's Retaliation Claims Fail.

#### 1.    Plaintiff's Title VII Retaliation Claims Fail

To survive a motion to dismiss Title VII retaliation claims, Plaintiff must plausibly allege: "(1) defendants discriminated—or took an adverse employment action—against [her], (2) because [s]he has opposed any unlawful employment practice." *Anderson v. City of New York*, 712 F. Supp. 3d 412, 428 (S.D.N.Y. Jan 17, 2024); *Leizerovici*, 2018 WL 1114703, at *8. Plaintiff cannot prevail where they do not "establish a plausible nexus between the adverse employment actions and her protected activity." *Anderson*, 712 F. Supp. 3d at 428, (citing *Dechberry v. New York City Fire Dep't*, 124 F.Supp.3d 131, 154 (E.D.N.Y. 2015)). In other words, Plaintiff must show that the employment action "disadvantaged" her. *Raimondo v. Erie 2-Chautauqua-Cattaraugus BOCES*, No. 22-cv-721s, 2023 WL 4624749, at *7 (W.D.N.Y. July 19, 2023).

Plaintiff raised a complaint to Wendy Jimenez about her performance review in "late April 2022," alleging that her poor performance review "has to do with her age and health status." (SAC ¶ 366.) This claim was investigated, and on May 20, 2022, Plaintiff was informed that an internal investigation found no wrongdoing. For purposes of Title VII, this claim is time-barred and cannot be considered as the basis of a retaliation claim. *See Freud v. N.Y.C. Dep't of*

26

*Educ.*, No. 22-879, 2023 WL 3103588, at *1 (2d Cir. Apr. 27, 2023) (affirming dismissal of time-barred Title VII retaliation claim).

Next, Plaintiff, on June 22, 2022, complained about alleged sexual harassment as described in detail in Defendants BDI, BDL, and TTI's Motion to Compel Arbitration, and her related complaint regarding the same on September 23, 2022. However, this too is insufficient to state a claim for retaliation, pursuant to Title VII. Here, Plaintiff lodged a complaint that she experienced sexual harassment while at an event sponsored by Zenith Worldwide, at the hands of an employee who did not work for any Defendants, in a foreign country. Within a span of a day, Plaintiff was informed that Lee, the alleged harasser, would not attend an event hosted by TikTok on or around June 23, 2022. (SAC ¶¶ 411-12.) Then, on July 8, 2022, Plaintiff was informed that Zenith had been asked to ensure that her alleged harasser, Lee, did not participate in future "TikTok meetings or business," and then was informed on July 29, 2022, that Lee was "being removed from supporting the TikTok account." (*Id*. ¶ 421.)

When Plaintiff made her initial claim of sexual harassment, Defendants responded, investigated, and ultimately decided to act by ensuring that the alleged harasser was "removed from supporting the TikTok account." (*Id*.) Plaintiff faced no alleged retaliatory conduct or discrimination after making this complaint, and in fact, received the full support of Defendants in light of this serious allegation. Thus, Plaintiff's claims fail because she does not demonstrate any adverse action taken against her for lodging this complaint, as required by Title VII. *Hahn v. Bank of Am. Inc.*, No. 2014 WL 1285421, at *24 (S.D.N.Y. 2014) (Plaintiff . . . was not dissuaded from making additional complaints . . . after suffering the alleged harassment. While not dispositive, as the standard is objective, this itself suggests that the conduct of which Plaintiff complains did not rise to the level of material adverse action."); *Tepperwien v. Entergy Nuclear*,

663 F.3d 556, 572 (2d Cir. 2011) (affirming dismissal of retaliation claims where plaintiff was not deterred from complaining, as he made multiple complaints); *Brand v. New Rochelle City Sch. Dist.*, No. 19-cv-7263, 2022 WL 671077, at \*12 (S.D.N.Y. May 7, 2022) (excluding plaintiff from meetings would not dissuade a reasonable employee from making a complaint).

Finally, Plaintiff claims that on September 23, 2022, she "expressed concerns about the treatment of women at TikTok, age discrimination, the sexual harassment at Cannes, Lion and the overall work environment" and was terminated shortly thereafter. (SAC ¶ 423.) Plaintiff, however, will not be able to connect the termination of her employment with her protected activity, given her well documented performance deficiencies herein. Plaintiff is apparently determined to disregard her consistently poor performance and professional failures, and pin the termination of her employment on her protected activity, when there is no evidence in support of this claim.

### 2.    Plaintiff's NYCHRL & NYSHRL Retaliation Claims Fail.

Before 2019, retaliation claims under Title VII and the NYSHRL were generally evaluated under the same standard. *Banks v. GM, LLC*, 81 F.4th 242, 275 (2d Cir. 2023); *see Mwantuali v. Hamilton Coll.*, No. 6:22-cv-1395, 2024 WL 1219752, at \* 19 (N.D.N.Y. Mar. 20, 2024). "While New York courts have not yet produced any substantive analysis of how this amendment changes standards of liability under the NYSHRL, courts in this District have interpreted the amendment as rendering the standard for claims closer to the [broader] standard of the New York City Human Rights Law." *Kaye v. N.Y.C. Health & Hosps. Corp.*, No. 18-cv-12137, 2023 WL 2745556, at \*17 (S.D.N.Y. Mar. 31, 2023).

Despite the lower standards for a retaliation claim under the NYCHRL, "the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in

such action." *Leroy*, 2022 WL 12144507, at *2 (quoting *Mihalik*, 715 F.3d at 112); *see Scalercio-Isenberg v. Morgan Stanley Servs. Grp.*, No. 19-cv-6034, 2019 WL 6916099, at *6-7 (S.D.NY. Dec. 19, 2019). The employer's conduct must at least in part be caused by discriminatory or retaliatory motives. *Scalercio-Isenberg*, 2019 WL 6916099, at *6-7 (citing *Mihalik*, 715 F.3d at 113 (internal citations omitted)). Although the NYCHRL is "slightly more solicitous of retaliation claims" than the standard articulated above, to survive a motion to dismiss the plaintiff must plead facts giving rise to an inference of a causal connection between the plaintiff's protected activity and an adverse employment action. *Brightman v. Physician Affliate Grp. of N.Y., P.C.*, No. 20-cv-4290, 2021 WL 1999466, at *28-29 (S.D.N.Y. May 19, 2021).

Plaintiff's April 2022 complaint cannot be the basis of her retaliation claim pursuant to either the NYSHRL or the NYCHRL. Plaintiff claims that as a result of her complaint, she was "[cut] . . . out of creative sessions and other meetings relevant to her role." (SAC ¶ 369.) However, Plaintiff also claims that she was in the midst of transitioning to a new role to be supervised by Mohammed, and that Mohammed became her supervisor "[i]n May or June 2022." (*Id.* ¶ 371.) Plaintiff was in a transitory phase of her career, and her attempts to claim she was the victim of retaliation simply because she was transitioning to a new role, one she adopted after she made her complaint, is ludicrous. *Ndongo v. Bank of China Ltd.*, No. 22-cv-05896, 2023 WL 2215261, at *6-7 (S.D.N.Y. Feb. 24, 2023) ("[e]ven under the NYCHRL's relatively liberal standard, petty slights or minor annoyances that often take place at work are not actionable retaliation.") (internal citations and quotations omitted); *Parlato v. Town of E. Haven*, No. 22-cv-1094, 2023 WL 5206873, at *16 (D. Conn. Aug. 14, 2023) (leaving plaintiff out of the decision making process does not constitute an adverse employment action); *McCullough v. Xerox Corp.*,

942 F. Supp. 2d 380, 387 (W.D.N.Y. 2013) ("being left out of meetings does not amount to an adverse action, absent a showing that some additional negative consequences flowed from that exclusion.").

Plaintiff's sexual harassment complaint cannot be the basis of her retaliation claim under either the NYSHRL or the NYCHRL. As mentioned above, there is no pleading of any adverse action or any conduct that was reasonably likely to deter any future complaints. Defendants fully investigated these complaints, and ultimately decided to act by ensuring that the alleged harasser was "removed from supporting the TikTok account." (SAC ¶ 421.)

Finally, Plaintiff's final September complaint cannot be connected to the termination of her employment, given her well documented performance deficiencies here. Plaintiff is apparently determined to disregard her consistently poor performance and professional failures, and pin the termination of her employment on her protected activity, when there is no evidence in support of this claim.

### H.    Plaintiff's FMLA Interference Claims Fail

Plaintiff's FMLA interference claim fails because she never requested FMLA leave. To successfully make out an FMLA interference claim, Plaintiff must establish "1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. Of Am.*, 817 F.3d 415, 424 (2d Cir. 2016).

To request FMLA leave, "[a]n employee must provide the employer at least 30 days advance notice before FMLA leave is to begin if the need for the leave is foreseeable" or, "[i]f 30 days notice is not practicable, such as because of a lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency, notice must

be given as soon as practicable." 29 C.F.R. § 825.302(a). While the employee does not need to expressly assert rights under the FMLA, or mention the FMLA by name, the employee "must clearly communicate the need for time off." *Lievre v. JRM Constr. Mgmt., LLC*, No. 17-cv-4439, 2019 WL 4572777, at *14 (S.D.N.Y. Sept. 20, 2019). That is, Plaintiff must "objectively assert her rights." *De Figueroa v. N.Y.*, 403 F. Supp. 3d 133, 155 (E.D.N.Y. 2019) (there is no FMLA violation where plaintiff did not "objectively assert[] her rights under the FMLA") (quoting *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 534, 535-36 (S.D.N.Y. 2009)). The critical question to establishing this fourth element is "whether information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Lievre,* 2019 U.S. Dist. LEXIS 161449, at *35.

First, despite her attempts to reframe the circumstances, Plaintiff never requested any medical leave. While Plaintiff does not need to mention FMLA by name, she did not "objectively assert her rights" such that her employer had notice of such request. *De Figueroa,* 403 F. Supp. 3d at 155 (E.D.N.Y. 2019) (there is no FMLA violation where plaintiff did not "objectively assert[] her rights under the FMLA") (internal citation omitted). Nowhere in the SAC does Plaintiff allege she mentioned the FMLA by name, or any medical leave. Plaintiff merely asserts that Defendants were aware of her condition, not that she was requesting time off. Thus, Plaintiff cannot plausibly argue that she "objectively asserted her rights." *Id.*

Even if the employer was aware of the serious health condition, "the employee must notify her employer that the specific absence at issue is due to that known chronic condition." *Rivera v. Crowell & Moring L.L.P.*, No. 14-cv-2774, 2016 WL 796843, at *14 (S.D.N.Y. Feb. 18, 2016); *see Amley v. Sumitomo Mitsui Banking Corp.*, No. 19-cv-3777, 2021 WL 4429784, at *9 (S.D.N.Y. Sept. 27, 2021) (holding that defendant's "general awareness of [p]laintiff's foot

problem did not relieve plaintiff of the obligation to advise [defendant] that he needed to take FMLA leave because of his foot problem."); *see also Tsatsani v. Walmart, Inc.*, No. 19-cv-9063, 2020 WL 6688939, at *19 (S.D.N.Y Oct. 26, 2020) (holding that even where a plaintiff "previously told her employer that she had a serious medical condition, the employer is not required to presume that every and any subsequent illness or medical mishap is due to that condition and therefore FMLA-eligible."). Because Plaintiff never requested any leave, BDI could not have known that Plaintiff was requesting an absence because of her purported medical conditions.

Second, even if Plaintiff told certain members of HR about seeing a doctor because of a medical condition, Plaintiff does not allege what exactly these conditions are. *Slaughter v. Am. Bldg. Maintenance Co. of New York*, 64 F. Supp. 2d 319, 325 (S.D.N.Y. 1999) ("[s]ufficient information must be given to the employer… to provide reasonable notice that the employee requests time off for a serious health condition"); *Nally v. New York State*, No. 10-cv-1186, 2013 WL 2384252, at *15 (N.D.N.Y. May 30, 2013) (holding that plaintiff did not assert they suffered from a serious medical condition to put defendants on notice that plaintiff needed to take FMLA leave). Plaintiff merely alleges that she told Jiminez and Barney that her "health was significantly impacted." (SAC ¶¶ 284, 344.)

Merely informing an employer that they have a medical condition is insufficient, as an "employer is not required to be clairvoyant." *Brown v. Pension Bds.*, 488 F. Supp. 2d 395, 409 (S.D.N.Y. 2007) (internal citations omitted). Plaintiff's conclusory allegations cannot come close the FMLA's standard that the employee "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303(a)-(c); *Tsatsani*, 2020 WL 6688939, at *19; *Milne v. Navigant Consulting*, No. 09-cv-

8964, 2010 U.S. Dist. LEXIS 115650, at *32-33 (Oct. 27, 2010) (holding that "courts in this circuit have rightfully held that merely alleging a serious health condition, without specifying a specific illness, does not adequately set forth the factual allegations necessary for an FMLA claim.") (internal quotations and citations omitted).

Third, Plaintiff's own belief that Defendants would not support her is without any merit. Plaintiff notes in the SAC that various other employees on her own team took medical leave. (SAC ¶ 344.) Plaintiff also admits that Barney suggested she "take time off." (*Id*. ¶ 284.) Moreover, Plaintiff does not allege that Defendants ever stated that Plaintiff could not take leave. Plaintiff merely believing that she would not be supported cannot support an FMLA interference claim. *Kemp v. Regeneron Pharms., Inc.*, No. 23-cv-174, 2024 WL 4111789, at *4 (2d Cir. Sept. 9, 2024) (holding that plaintiff's "own subjective speculation and views about [defendant's] intent are not admissible" on a FMLA interference claim). Thus, this claim must be dismissed in its entirety.

## I.    Plaintiff's NYCHRL Interference Claim Fails.

Plaintiff fails to allege a cognizable claim of interference with protected rights under the NYCHRL. The NYCHRL provides that "[i]t shall be an unlawful discriminatory practice for any person to… interfere with… any person in the exercise or enjoyment of… any right granted or protected pursuant to this section. NYCHRL § 8-107(19). For a violation of this statute, a required element is a "threat." *Cadet v. All. Nursing Staffing of N.Y., Inc.*, 632 F. Supp. 3d 202, 236 (S.D.N.Y. 2022). A "threat" is the "creation of [a]n impending injury. *Id.* (internal quotations and citations omitted). Although the threat does not need to be physical, there must be "some affirmative threat beyond the adverse employment action itself." *Id.*; *see Rossbach v. Montefiore Med. Ctr.,* No. 19-cv-5758, 2021 WL 930710, at *8 (S.D.N.Y. Mar. 11, 2021) (requiring "affirmatively coercive, intimidating, or threatening" actions). District courts in the

Second Circuit have been hesitant to construe this as "coterminous or duplicative of the NYCHRL's retaliation provisions." *Cadet*, 632 F.Supp. 3d at 238.

Throughout Plaintiff's 108-page SAC, Plaintiff fails to identify any threats. *Rosas v. Balter Sales Co.*, No. 12-cv-6557, 2015 WL 12915807, at *38 (S.D.N.Y. Mar. 30, 2015) (dismissing plaintiff's claim because they did not "present any evidence of a threat, or even alleged that a threat was made."); *Macias v. Barrier Free Living, Inc.*, No. 16-cv-1735, 2018 WL 1603566, at *9 (S.D.N.Y. Mar. 27, 2018) (holding that plaintiff's claim must be dismissed where they do not explain how their employer threatened their rights).

The only remote possibility of a threat throughout the SAC is that Plaintiff's employment may be terminated if she did not fulfill her job duties. However, threats to terminate employment are not a cognizable threat under this provision. *Cadet*, 632 F. Supp. 3d at 237; *Palmer v. eCapital Corp.*, No. 24-cv-15, 2024 WL 3794715, at *12 (S.D.N.Y. Aug. 13, 2024) (dismissing plaintiff's claim where there was "no threat beyond the adverse employment action itself"). Further, Defendants did not attempt to coerce, intimidate, or threaten her to prevent her from making any complaint about alleged discriminatory behavior. *Rossbach*, 2021 U.S. Dist. LEXIS 46012, at *23-24 (holding that ignoring harassment is not an affirmative threat). Thus, this claim should be dismissed in its entirety.

### J.    The Court Should Decline to Exercise Supplemental Jurisdiction.

Finally, given that Plaintiff's Title VII, ADEA, and FMLA claims must be dismissed, for the reasons laid out above, this Court should decline to exercise supplemental jurisdiction. A district court "may decline to exercise supplemental jurisdiction over [state law claims] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). It is appropriate to do so here, given the lack of remaining federal claims, or lack of indicia. *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 147 (E.D.N.Y. 2015) ("[i]n the interest

of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'"); *see Garcia v. Marc Tetro, Inc.*, No. 18-cv-10391, 2020 WL 997481, at *4 (S.D.N.Y. Mar. 2, 2020) (declining to exercise supplemental jurisdiction when there were no remaining federal claims when doing so would "not promote the values of judicial economy, convenience, fairness, and comity.").

## V.    CONCLUSION

For the foregoing reasons, Defendants TTI, BDI, and BDL request that this Court Dismiss Plaintiff's claims for gender discrimination, retaliation, and hostile work environment pursuant to Title VII, the NYSHRL, and NYCHRL; any age claims pursuant to Title VII and the ADEA, disability discrimination pursuant to the NYSHRL and NYCHRL, interference with protected rights pursuant to the NYCHRL, and interference pursuant to the FMLA.

Dated: September 30, 2024,          SEYFARTH SHAW LLP

By: */s/ Ivan D. Smith*
    Ivan D. Smith
    Maureen Stampp
    Amanda Williams
    620 Eighth Avenue
    New York, New York 10018-1405
    (212) 218-5500
    idsmith@seyfarth.com
    mstampp@seyfarth.com
    amwilliams@seyfarth.com

    *Attorneys for Defendants TikTok Inc.,*
    *ByteDance Ltd., and ByteDance Inc.*

313979647v.1