```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
KATIE ELLEN PURIS,                       :
                    Plaintiff,           :
                                         :      24cv944 (DLC)
            -v-                          :
                                         :      AMENDED OPINION
TIKTOK INC., et al.,                     :         AND ORDER
                    Defendants.          :
                                         :
                                         :
---------------------------------------- X
```

APPEARANCES:

For plaintiff Katie Ellen Puris:
Michael John Willemin
Monica Hincken
Wigdor LLP
85 Fifth Avenue, 5th Floor
New York, NY 10003

For defendants Lidong Zhang and Douyin Co., Ltd.:
Patrick William Shea
Kenneth William Gage
Paul Hastings LLP
200 Park Avenue, 30th Floor
New York, NY 10166

DENISE COTE, District Judge:

Relying on defense counsel's agreement to accept service of process on behalf of the five defendants in this action, plaintiff's counsel agreed to request that the Court extend the defendants' time to answer for 90 days. Two weeks later, defense counsel explained that it was not authorized to accept service on behalf of two China-based defendants, Douyin Co., Ltd., ("Douyin") and Lidong Zhang ("Zhang"). Plaintiff seeks to

enforce the agreement to accept service, and defendants Douyin and Zhang have moved to dismiss the claims against them for insufficient service of process. For the following reasons, Douyin and Zhang's motion was granted on November 13.[1]

## Background

The following facts are taken from the declarations and exhibits filed in support of and in opposition to the instant motion, as well as from the parties' other submissions in this case as reflected on the public docket. Any factual disputes are noted.

Following the termination of her employment, plaintiff Katie Ellen Puris ("Puris") brought this action on February 8, 2024, against defendants TikTok Inc. and ByteDance Ltd., alleging employment discrimination, retaliation, and the unlawful interference of rights guaranteed by the Family and Medical Leave Act and the New York City Human Rights Law. TikTok Inc., a United States-based corporation, waived service on February 12. ByteDance Ltd., which is headquartered in China, was served at its registered address in the Cayman Islands on April 4.

---

[1] This Amended Opinion differs from the November 13 Opinion in the formulation of its conclusion.

2

On April 25, 2024, before filing her first amended complaint ("FAC"), Puris's attorney Michael Willemin informed Ivan D. Smith of Seyfarth Shaw, counsel for TikTok Inc. and ByteDance Ltd., that ByteDance Inc., Douyin, and Zhang would also be named as defendants in the FAC.[2] ByteDance Inc. is a United States-based corporation, while Douyin and Zhang are both based in China.

The next day, April 26, Willemin sent Smith an email conveying that he planned to contact Zhang and two other ByteDance Ltd. executives. Smith forwarded this email to Michael Cole, the Head of Employment Litigation for TikTok Inc. Cole told Smith to tell Willemin that Smith was "in the process" of representing the new defendants and that Willemin thus should not contact them directly. Smith did so on April 26, explaining he was "in the process of representing all of the defendants in this action."

---

[2] According to the second amended complaint ("SAC"), ByteDance Ltd. is a "holding company" that owns ByteDance Inc. and TikTok Inc. It also "employs ByteDance's top executives." Douyin is a Chinese company that controlled aspects of Puris's employment. Zhang is the chairman of ByteDance Ltd.'s China region and exercised control over TikTok Inc. ByteDance Inc. was a United States-based corporation that employed some individuals involved with ByteDance Ltd. or its subsidiaries, but it is not clear what role, if any, it currently plays.

3

A meeting critical to this dispute occurred the following Monday, April 29. Smith and other Seyfarth Shaw attorneys met via videoconference with Cole and Cole's supervisor Melynnie Rizvi, ByteDance Inc.'s Head of Global Employment Law.[3] Smith has a different impression of what transpired in this meeting than what Cole and Rizvi remember. Smith believes that he was authorized to accept service for all defendants in exchange for consent to an extension for 90 days of the time to answer. As described below, Smith promptly acted on that understanding and made the proposal to plaintiff's counsel.

Cole and Rizvi say they thought that Smith was going to merely "discuss the proposal" with plaintiff's counsel, while Cole would confer with Douyin's China-based legal team, including Rachel Xu, in-house counsel for Douyin. Cole, however, did not reach out to Xu about the lawsuit until May 16 or 17. Xu asserts that she first learned of this litigation at that time.

On April 30, Smith wrote to Willemin to say he was "willing to accept service for all defendants" if Puris would consent to an extension of time for defendants to respond to the FAC.

---

[3] Cole and Rizvi have explained that the China-based affiliates of TikTok Inc. have their own legal team, although Cole and Rizvi sometimes advise that team on U.S. litigation.

Willemin agreed the same day. Puris then filed the FAC on May 6, naming all five defendants. That afternoon, Smith emailed Cole and Rizvi to notify them of the filing, and to convey that Willemin had agreed to extend the deadline for a response until August 5 "if we accept service for all defendants."

On May 7, Smith's office sent Willemin a proposed stipulation to extend the defendants' time to respond to the complaint. Willemin asked Smith to "formalize" confirmation that he had "accepted service of the amended complaint on behalf of all defendants, and that defendants are waiving any arguments as to insufficient or improper service." Smith answered, "Yes. As long as you are waiving any issues concerning defaulting by [ByteDance Ltd.]," to which Willemin responded, "Agreed."[4]

On May 8, Seyfarth Shaw attorneys filed notices of appearance on behalf of all five defendants. Seyfarth Shaw also sent proposed representation letters, meant to be shared with Douyin and Zhang, to Cole and Rizvi. The same day, Rizvi informed Smith via email that she would like him to "hold on accepting service for the other defendants," as "[w]e are

---

[4] Smith initially refused to accept service on behalf of ByteDance Ltd. After that company was served at its registered address on April 4, it did not respond to the complaint within the time limit provided by Rule 12(a), Fed. R. Civ. P. Willemin noted this to Smith in his April 26 email, leading to Smith's April 30 offer to accept service for all defendants in exchange for an extension of the time to respond.

currently in the process of talking with several firms." Smith responded that he had "already agreed to accept service for all defendants." He noted that different firms could be substituted to represent Douyin and ByteDance Ltd., but that "we did accept service." Cole responded, indicating that their "wires got crossed" and that the defendants "still need[ed] to sort through any joint representation letters." He suggested that, despite the "slight change of plan with bringing in co-counsel," the situation was "all good" and Douyin and Zhang could simply have their attorneys "make their appearance with the first responsive pleading" rather than needing to "substitute" counsel.

In a letter motion of May 9, Smith requested the Court's approval of the stipulated extension for defendants to respond to the FAC. In that letter, Smith explicitly represented that Seyfarth Shaw represented all five defendants. He also explained that "Defendants, before being served with process, waived service of a summons." Approval was granted on May 10.

On Friday, May 10, Rizvi texted Smith to tell him that "the company [ByteDance Inc.] does not have authority to agree to accept service on behalf of the Chinese entities." She then spoke with him over the telephone and asked him to withdraw his appearance for those defendants and to notify the Court and plaintiff that he could not accept service on their behalf.

6

Rizvi then emailed Smith to confirm that "the company does not have authority to accept service on behalf of Douyin or Lidong [Zhang], and we are in the process of obtaining separate counsel to represent them."

On May 13, the following Monday, Smith called Willemin to say he did not have authority to accept service for Douyin and Zhang. Seyfarth Shaw also moved to withdraw as counsel for Douyin and Zhang. An Order of May 15 granted the motion to withdraw and ordered Seyfarth Shaw to serve the Order on Douyin and Zhang and to provide Puris's counsel with contact information for them.

Smith asserts that he has "never communicated with any representative of Douyin Co. or with Lidong Zhang." Cole says that he did not notify Douyin of the FAC until May 16, when he messaged Xu, who then told Cole that Douyin and Zhang would retain separate counsel. Rizvi says that neither she nor anyone on her team was ever given authority to accept service for Douyin or Zhang, nor could she hire Smith or authorize him to accept service on their behalf. Xu attests that Douyin never authorized anyone to accept service in connection with this matter. And Zhang attests that, while he became aware of this action on May 23, he has never authorized anyone to accept service on his behalf.

7

On July 31, Paul Hastings' attorneys filed notices of appearances on behalf of Douyin and Zhang, but only for the purpose of moving to dismiss for lack of service. The same day, Douyin and Zhang so moved, pursuant to Rule 12(b)(5), Fed. R. Civ. P. Puris filed the SAC on August 22, and Douyin and Zhang renewed their 12(b)(5) motion on September 9. The motion was fully submitted on October 14.

## Discussion

Defendants Douyin and Zhang have moved to dismiss this action for failure to serve them. "[W]hen a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." Dickerson v. Napolitano, 604 F.3d 732, 752 (2d Cir. 2010) (citation omitted).

Rule 4(f), Fed. R. Civ. P., governs service of foreign defendants, whether individuals or corporations. See Fed. R. Civ. P. 4(h)(2). Rule 4(f) allows service "by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention," or, if not prohibited by an applicable convention, by "other means . . . reasonably calculated to give notice." Fed. R. Civ. P. 4(f)(1)-(2). China is a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361,

T.I.A.S. No. 6638 ("Hague Convention"). Accordingly, corporations and individuals in China must be served through means permitted by the Hague Convention. See Burda Media, Inc. v. Viertel, 417 F.3d 292, 299-300 (2d Cir. 2005).

"[S]ervice of process on an attorney not authorized to accept service for his client is ineffective." Santos v. State Farm Fire & Cas. Co., 902 F.2d 1092, 1094 (2d Cir. 1990). The law of agency informs whether a person is authorized to accept service on behalf of another person. Id. at 1095. An agency relationship may be established in one of two ways. First, an agent might have actual authority, based on the principal's words or conduct indicating to the agent that they have authority to act. United States v. Gatto, 986 F.3d 104, 127 (2d Cir. 2021). Second, an agent could have apparent authority, whereby the principal's manifestations to a third party indicate that the agent has authority to interact with the third party on the principal's behalf. Id. Both forms of agency rely on the implicit or explicit creation of authority by the principal's words or conduct. Id. "[C]ustomarily only the representation of the principal to the third party can create apparent authority, not the representation of the agent alone." Id. (emphasis omitted).

Puris has not met her burden to show there has been effective service on Douyin and Zhang. She is required, therefore, to serve them through the Hague Convention.

Puris contends that she was entitled to rely on Smith's acceptance of service on behalf of Douyin and Zhang since parties are responsible for the actions of their attorneys. She emphasizes that she forgave a default by ByteDance Ltd. and agreed to request that all defendants have until August 5 to respond to the complaint because Smith had accepted service on behalf of Douyin and Zhang. This argument fails. Puris has not shown that either Douyin or Zhang authorized Smith to accept service on their behalf. Smith's purporting to represent Douyin and Zhang does not establish the necessary agency relationship between them. Nor is there sufficient reason to doubt Xu's and Zhang's declarations stating that Douyin and Zhang never authorized anyone to accept service in this action.

To be clear, for two weeks, until May 13, Puris had every reason to believe that Smith was authorized to accept service for all defendants. Indeed, plaintiff's counsel attempted to ensure that service would be effective, such as by asking Smith to confirm that he was accepting service for all defendants and that they were waiving any objections to ineffective service. But these facts do not provide a basis for finding that either

Zhang or Douyin actually authorized Smith to accept service on their behalf.

Puris points to evidence that Cole and Rizvi were acting on behalf of Douyin and Zhang. As Puris notes, Cole told Smith to say he was "in the process" of representing all defendants, and Rizvi's May 8 and May 10 emails to Smith both indicated that "we" were communicating with several firms, apparently to secure separate representation for Douyin and Zhang. That evidence does not establish, however, that either of these attorneys, who were in-house counsel for co-defendants, were authorized to accept service for Douyin and Zhang. The fact that someone is a defendant's agent for some purposes does not establish that the person is authorized to accept service.

Puris also argues that Douyin and Zhang's motion to dismiss, although it was filed pursuant to Rule 12(b), Fed. R. Civ. P., should be treated as a motion for reconsideration, and that it could not meet the high bar for motions of that kind to succeed. But the instant motion is not a motion for reconsideration. Douyin and Zhang had no prior opportunity to be heard on their arguments for why they had not been served.

Finally, Puris seeks an evidentiary hearing. An evidentiary hearing is unwarranted here. It is not clear from the briefing or from the record what particular facts could show

11

that Douyin and Zhang authorized Smith to accept service on their behalf. And for the reasons explained above, additional evidence that Cole and Rizvi were directly or indirectly acting on behalf of Douyin and Zhang in some capacity unrelated to service would not be sufficient to meet Puris's burden.

## Conclusion

Douyin and Zhang's September 9 motion is granted to the extent it sought to quash service. The plaintiff must serve those two defendants through Hague Convention procedures if she wishes to pursue her claims in this action against them. The plaintiff shall file a status update on those efforts by February 28, 2025.

Dated:   New York, New York
         December 10, 2024

                                    _____
                                         DENISE COTE
                                    United States District Judge